**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRANDI PRICE and CHRISTINE CHADWICK, on behalf of themselves and all others similarly situated, | ) ) ) **CASE NO. 1:17-cv-614** |
| Plaintiffs, | ) ) ) **CLASS ACTION** |
| v. | ) ) |
| L'OREAL USA, INC. and MATRIX ESSENTIALS, LLC, | ) **JURY TRIAL DEMANDED** ) ) |
| Defendants. | ) ) |

**CLASS ACTION COMPLAINT**

Plaintiffs Brandi Price and Christine Chadwick (collectively, "**Plaintiffs**"), on behalf of themselves and all others similarly situated, bring this class action against Defendants L'Oreal USA, Inc. ("**L'Oreal**") and Matrix Essentials, LLC ("**Matrix**") (collectively, "**Defendants**"), and allege on personal knowledge, investigation of their counsel, and on information and belief as follows:

**INTRODUCTION**

1.      This is a nationwide class action brought by Plaintiffs on behalf of themselves and other similar situated consumers who purchased Matrix Biolage Keratindose Pro-Keratin + Silk Shampoo, Pro-Keratin + Silk Conditioner, and/or Pro-Keratin Renewal Spray (collectively, the "**Products**" or "**Keratindose Products**") for personal or household use and not for resale ("**Class Members**").

2.      Defendants manufacture, advertise, market, distribute and sell the Keratindose Products. As alleged with specificity herein, through an extensive, uniform, nationwide advertising and marketing campaign, Defendants claim that the Products are keratin

treatments that repair damaged hair.  In particular, on the Product labels and through their uniform advertising and marketing campaign, Defendants make the following representations about the Products:

- "Pro-Keratin + Silk;"

- "Shampoo for Overprocessed Hair;"

- "Conditioner for Overprocessed Hair;"

- "Pro-Keratin Renewal Spray;"

- "Formulated with Pro-Keratin and Silk, Matrix's keratin treatment for damaged hair provides targeted reinforcement for over-processed, weak or fragile hair;"

- "Prevent[s] damage;"

- "Restore[s] overprocessed hair;"

- "Matrix's first advanced system designed to restore lost essentials;" and

- Makes hair "90% more conditioned after one application" when combining the "system of Keratindose Shampoo, Conditioner and Pro-Keratin Renewal Spray vs. a non-conditioning shampoo."

3.      Keratin is a protein naturally present in human hair, skin and nails.  It is made by cells called keratinocytes and consists of amino acids.  Its primary function is to protect the cells in hair, skin and nails from damage or stress.

4.      Through its uniform, nationwide advertising campaign, including the name of the Keratindose Product line and the names of each Product, Defendants have led consumers to believe that their Keratindose Products actually contain keratin and will confer the claimed benefits of keratin to the consumer.

5.      In reality, the Keratindose Products *do not contain any keratin at all* and are

incapable of providing the claimed benefits of keratin to the consumer.

6.      Naming the Products "Keratindose" when they contain no keratin, and echoing that representation with additional statements on the Product labels and in a uniform advertising campaign, is unlawful.  The Keratindose Products' labels are false, deceptive and misleading, in violation of the Federal Food Drug & Cosmetics Act and its parallel state statutes, and almost every state warranty, consumer protection, and product labeling law throughout the United States.

7.      Defendants' misbranding is intentional, and renders the Products worthless or less valuable.  If Defendants had disclosed to Plaintiffs and putative Class Members that their Keratindose Products *do not contain any keratin at all*, and that the Products do not provide the claimed benefits of keratin, Plaintiffs and putative Class Members would not have purchased the Products or they would have paid less for the Products.

8.      As a result of Defendants' misconduct and misrepresentations, Plaintiffs and putative Class Members have suffered injury in fact, including economic damages.

## PARTIES

9.      Plaintiff Brandi Price is and was at all times relevant to this matter a resident of the state of New York.

10.      Plaintiff Christine Chadwick is and was at all times relevant to this matter a resident of the state of California.

11.      Defendant L'Oréal USA, Inc., is a Delaware corporation.  At all times relevant to this matter, L'Oréal USA, Inc. was a citizen of the state of New York with a principal place of business in New York, New York.  At all times relevant to this Complaint, L'Oréal USA, Inc. has transacted business in this judicial district and throughout the United States, including New

York and California.

12.     Defendant Matrix Essentials, LLC, is a New York domestic limited liability corporation.  At all times relevant to this matter, Matrix Essentials, LLC was a citizen of the state of New York with a principle place of business in Cleveland, Ohio.  Matrix is a subsidiary of L'Oreal USA, Inc. and is responsible for the nationwide distribution of several ranges of haircare products, including the Biolage Products.

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over Defendants in this matter.  The acts and omissions giving rise to this action occurred in the state of New York.  Defendants have been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiffs and putative Class Members, which arose out of the acts and omissions that occurred in the state of New York, during the relevant time period, at which time Defendants were engaged in business activities in the state of New York.

14.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendants are citizens of different states.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

15.     Under 28 U.S.C. § 1391, venue is proper in the Southern District of New York because Defendants conduct business in this District, Defendant L'Oreal USA, Inc. maintains its principal place of business in this District, and both Defendants have intentionally availed themselves of the laws and markets within this District.

## FACTS COMMON TO ALL CLASS MEMBERS

### A.  The Matrix Biolage Keratindose Products

16.     Defendants manufacture, advertise, market, distribute and sell the Keratindose Products, as part of their Matrix Biolage brand.

17.     The Keratindose Products are marketed as a three-step system, and are sold at retail stores such as CVS, Ulta, Target, Walgreens, J.C. Penney and Walmart, and through e-commerce websites such as Ulta.com, Walmart.com, Walgreens.com, CVS.com, Amazon.com and Target.com.

18.     Defendants manufacture, advertise, market, distribute and sell the Keratindose Products throughout the United States.  The Shampoo Product and the Conditioner Product are sold in two sizes — 13.5 fl. oz. and 33.8 fl. oz.  The Keratindose Pro-Keratin Renewal Spray is sold in one size – 6.8 fl. oz.

### B.  Defendants' False and Deceptive Advertising and Labeling of the Products

19.     In violation of 21 U.S.C. § 362(a) and 21 C.F.R. § 701.1(b), Defendants have consistently, falsely and deceptively advertised and labeled the Matrix Biolage Keratindose Products in an effort to make consumers believe that the Products contain keratin.

20.     In advance of filing this action, Plaintiffs had a subject-matter expert review the ingredients of the Keratindose Products, after which the expert confirmed that the Products do not contain keratin.

21.     Since launching the Keratindose Products, Defendants have consistently conveyed their uniform, deceptive message to consumers throughout the United States, including the states of New York and California, that the Products are formulated with Pro-Keratin and will confer the claimed benefits of keratin treatments.

22.     These deceptive claims have been made and repeated across a variety of media including Defendants' Product labels, websites and online promotional materials, and at the point-of-purchase, where they cannot be missed by consumers.  In truth, Defendants' claims that the Keratindose Products are keratin treatments is false, misleading, and deceptive because the Products do not contain keratin or confer the claimed benefits of keratin.

23.     Defendants' false, misleading, and deceptive marketing campaign begins with the name of the Product line and each individual Product.  Defendants intentionally and deceptively incorporated the word "keratin" into the name Keratindose, notwithstanding the fact that the Products contain no keratin. A reasonable consumer reading the names of the Keratindose Products would be misled and would reasonably believe that each Product contains keratin and that each Product provides the claimed benefits of keratin.

24.     21 U.S.C.S. § 362(a) deems a cosmetic misbranded if the "labeling is false or misleading in any particular."

25.     21 C.F.R. § 701.1(b) establishes that the labeling of a cosmetic "may be misleading" where it designates the cosmetic "by a name which includes or suggests the name of one or more but not all . . . ingredients."

26.     Here, Defendants' conduct is all the more egregious, as they have chosen to label the Keratindose Products with brand and Product names which blatantly suggest the inclusion of an ingredient – keratin – which is not found in the Products at all.

27.     Further, the front labels of the Keratindose Shampoo, Conditioner and Renewal Spray prominently state "Keratindose Pro Keratin + Silk" in a large bold font, leading consumers to believe the Products contain keratin when they do not.







     28.    The labels on the back of each Product perpetuate the false, deceptive and misleading representations and claims.   Specifically, the back labels of the Keratindose Shampoo, Conditioner and Renewal Spray represent that each Product is formulated with "Pro-Keratin + Silk."

9

29.     Defendants reinforce the false and deceptive claims that the Products contain keratin on their website and the websites of various authorized retailers:

### Keratindose Shampoo

Damaged, over-processed hair can be brittle, dull and lifeless. *Formulated with Pro-Keratin and Silk, our keratin shampoo provides targeted reinforcement for over-processed, weak or fragile hair.* When combined with the KeratinDose Conditioner and Pro-Keratin Renewal Spray, formulas provide cleansing while locking in moisture to help fight frizz. *Restore overprocessed hair. 90% more conditioned after one application\*.*

*\*When using the system of KeratinDose Shampoo, Conditioner and Pro-Keratin Renewal Spray vs. a non-conditioning shampoo.*

-     Rich, sulfate free lather gently cleanses while maintaining the integrity of over-processed hair

-    Formula with Pro-Keratin and silk provides targeted reinforcement and moisture balance to the hair

-    Hair is shiny and healthy-looking with increased elasticity

-    Free of sulfates, parabens and harsh salts

### How To Use

Apply to wet hair with a massaging motion. *For better results, we recommend that you combine with the KeratinDose Conditioner and Pro-Keratin Renewal Spray.*

http://www.matrix.com/biolage/keratindose-shampoo (emphasis added) (last visited January 26, 2017).

### Keratindose Conditioner

Damaged, over-processed and unconditioned hair can feel brittle, lacking manageability and shine. *Formulated with Pro-Keratin and Silk, our KeratinDose Conditioner provides targeted reinforcement for over-processed, weak or fragile hair.* When combined with the KeratinDose Shampoo and Pro-Keratin Renewal Spray, formulas provide *nourishment and cleansing while balancing moisture for over-processed hair. Restore overprocessed hair. 90% more conditioned after one application\*.*

*\*When using the system of KeratinDose Shampoo, Conditioner and Pro-Keratin Renewal Spray vs. a non-conditioning shampoo.*

10

- Paraben free *conditioner moisturizes and smoothes overprocessed hair*

*- Formula nourishes hair and prevents damage*

- Hair is left silky with manageability

**How To Use**

Apply to wet hair with a slow massaging motion. Leave in your hair for 1-3 minutes. Rinse from hair. *For better results, we recommend that you combine this with KeratinDose Shampoo and Pro-Keratin Renewal Spray.*

http://www.matrix.com/biolage/keratindose-conditioner (emphasis added) (last visited January 26, 2017)

**Keratindose Pro-Keratin Renewal Spray**

Damaged, over-processed hair lacks softness and shine. *Formulated with Pro-Keratin and Silk, our keratin treatment for damaged hair provides targeted reinforcement for over-processed, weak or fragile hair.* When used with the KeratinDose Shampoo and Conditioner, formulas provide nourishment and cleansing while balancing moisture for over processed hair. *Restore overprocessed hair. 90% more conditioned after one application\*.*

*\*When using the system of KeratinDose Shampoo, Conditioner and Pro-Keratin Renewal Spray vs. a non-conditioning shampoo.*

- Paraben free leave-in lotion provides instant silkiness

*- Restores your hair's shine and manageability*

*- Your hair is protected, frizz and flyaways are tamed*

**How To Use**

Spray the Pro-Keratin Renewal Spray onto wet hair after conditioning and style as usual. Spray on dry hair as a finishing product for extra conditioning and softness. *For better results, we recommend that you combine with KeratinDose Shampoo and Conditioner.*

http://www.matrix.com/biolage/keratindose-pro-keratin-renewal-spray (emphasis added) (last visited January 26, 2017).

**D.  The Impact of Defendants' Misleading and Deceptive Advertising**

30.    Defendants intended for consumers to rely upon the representations on the Product labels, and reasonable consumers did, in fact, so rely.  These representations are often the only source of information consumers can use to make decisions concerning whether to buy and use such products.

31.    Consumers lack the ability to test or independently ascertain the genuineness of product claims of normal everyday consumer products, especially at the point-of-sale. Reasonable customers must therefore rely on consumer product companies, such as Defendants, to honestly represent their Products and the Product attributes on the Product labels.

32.    At all relevant times, Defendants directed the above-referenced Product labels, statements, claims and innuendo, including that the Products were keratin treatments formulated with Pro-Keratin and providing the claimed benefits of keratin, to consumers in general and Class Members in particular, as evidenced by their eventual purchases of the Products.

33.    Plaintiffs and Class Members did reasonably rely on Defendants' Product labels, statements, claims and innuendo in deciding to purchase the Products and were thereby deceived.

34.    As a result of Defendants' deceptive labeling and/or marketing campaign, Defendants have caused Plaintiffs and putative Class Members to purchase the Keratindose Products, which do not contain keratin and are incapable of providing the claimed benefits of keratin.   Plaintiffs and putative Class Members have been harmed in the amounts they respectively paid for the Products.

35.    As a result of Defendants' misconduct, Defendants were able to sell the Matrix Biolage Keratindose Products to hundreds of thousands of consumers throughout the United

States—including Plaintiffs and putative Class Members—and to realize sizeable profits.

36.     Plaintiffs and putative Class Members were harmed and suffered actual damages in that Plaintiffs and putative Class Members did not receive the benefit of their bargain as purchasers of the Keratindose Products, which were represented as containing keratin and, thereby, providing the claimed benefits of keratin.   Instead, Plaintiffs and putative Class Members are worse off after purchasing the Products, as Plaintiffs and putative Class Members paid for Products that do not contain keratin and are incapable of providing the claimed benefits of keratin.   Defendants developed and knowingly employed a labeling, advertising and/or marketing strategy designed to deceive consumers into believing that the Keratindose Products contain keratin and are capable of providing the claimed benefits of keratin.

37.     The purpose of Defendants' scheme is to stimulate sales and enhance Defendants' profits.

38.     As the manufacturers, marketers, advertisers, distributors and/or sellers of the Keratindose Products, Defendants possess specialized knowledge regarding the Products and the content and effects of the ingredients contained therein.   In other words, Defendants know exactly what is – and is not – contained in the Products.

39.     Defendants knew or should have known, but failed to disclose, that the Products do not actually contain keratin and are incapable of providing the claimed benefits of keratin, as labeled and/or marketed by Defendants.

40.     Plaintiffs and putative Class Members were, in fact, misled by Defendants' labeling, representations and marketing of the Products.

41.     The lack of keratin and the inability of the Keratindose Products to provide the

claimed benefits of keratin leave no reason to purchase these Products at all, since other proven and less-expensive products exist.

42.     The Keratindose Products are defined as "cosmetics" under 21 U.S.C.S. § 321(i) of the Federal Food Drug & Cosmetic Act ("**FDCA**").

43.     Defendants' deceptive statements violate 21 U.S.C.S. § 362(a), which deems a cosmetic product misbranded when the label contains a statement that is "false or misleading in any particular."

44.     The FDA promulgated regulations for compliance with the FDCA at 21 C.F.R. §§ 701 *et seq.* (for cosmetics).

45.     The introduction of misbranded cosmetics into interstate commerce is prohibited under the FDCA and all parallel state statutes cited in this Complaint.

46.     California's Sherman Food, Drug, and Cosmetic Law deems a cosmetic misbranded if "its labeling is false or misleading in any particular."  Cal. Health & Safety Code § 111730.

47.     Similarly, New York state law finds a cosmetic misbranded if "its labeling is false or misleading in any particular."  NY Educ. L § 6818(2)(a).

48.     Plaintiffs and putative Class Members would not have purchased the Matrix Biolage Keratindose Products had they known the Products did not contain keratin and are incapable of providing the claimed benefits of keratin, or had they known about Defendants' scheme to sell the Products as misbranded cosmetics.

## PLAINTIFFS' FACTUAL ALLEGATIONS

**Plaintiff Price's Experience**

49.     After viewing advertisements and/or Product packaging for Matrix Biolage

Advanced Keratindose Pro-Keratin Hair Renewal Spray regarding its purported contents and benefits, Plaintiff Price purchased the Keratindose Spray at a Wal-Mart in Cortland, New York in late 2014, and began using the Product.

50.     As a result of Defendants' misrepresentations and omissions, Plaintiff Price purchased the Keratindose Spray because she reasonably believed it contained keratin and was capable of providing the claimed benefits of keratin.  Plaintiff Price would not have purchased the Keratindose Spray if she knew that it did not contain keratin.

51.     Plaintiff Price had not previously used any Matrix Biolage Advanced Keratindose Products.

52.     Plaintiff Price followed the instructions on the Keratindose Spray packaging, as directed by Defendants.

53.     After several weeks of use, Plaintiff Price noticed that the Keratindose Spray seemed to be damaging her hair, causing it to be brittle and dry.  As a result, she ceased using the Product and had to pay for conditioning treatments to fix her damaged hair.

**Plaintiff Chadwick's Experience**

54.     After viewing advertisements and/or Product packaging for Matrix Biolage Advanced Keratindose Shampoo and Conditioner regarding their purported contents and benefits, Plaintiff Chadwick purchased the Keratindose Shampoo and Conditioner at a J.C. Penney retail store in Sacramento, California in August 2016, and began using both Products.

55.     As a result of Defendants' misrepresentations and omissions, Plaintiff Chadwick purchased the Keratindose Shampoo and Conditioner because she reasonably believed that both Products contained keratin and were capable of providing the claimed benefits of keratin.  Plaintiff Chadwick would not have purchased the Keratindose Shampoo and Conditioner if she knew that

the Products did not contain keratin.

56.     Plaintiff Chadwick had not previously used any Matrix Biolage Advanced Keratindose Products.

57.     Plaintiff Chadwick used the Products daily and followed the instructions on the Keratindose Shampoo and Conditioner packaging, as directed by Defendants.

58.     Plaintiff Chadwick purchased additional bottles of the Keratindose Shampoo and Conditioner at SmartStyle Salon and Ulta retail stores located in Sacramento, California throughout 2016.

59.     After several months of use, Plaintiff Chadwick noticed that the Keratindose Shampoo and Conditioner seemed to be damaging her hair, causing it to be brittle and dry. Further, Plaintiff Chadwick suffered hair loss after using the Products.  As a result, she ceased using the Products.

## CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this action on behalf of themselves and the following Class pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3).  Specifically, the Class is defined as:

> All persons in the United States and its territories who purchased Matrix Biolage Keratindose Pro-Keratin + Silk Shampoo, Conditioner, and/or Pro-Keratin Renewal Spray between January 26, 2013 and the present.

61.     Excluded from the Class are (a) any person who purchased the Products for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any

Defendant, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

62.     Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

63.     Plaintiffs also bring this action on their own behalf and on behalf of the following Subclasses pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and/or 23(b)(3).   Specifically, the Subclasses are defined as:

**New York Subclass**

All persons who reside in the state of New York and purchased Matrix Biolage Keratindose Pro-Keratin + Silk Shampoo, Conditioner, and/or Pro-Keratin Renewal Spray between January 26, 2013 and the present.

**California Subclass**

All persons who reside in the state of California and purchased Matrix Biolage Keratindose Pro-Keratin + Silk Shampoo, Conditioner, and/or Pro-Keratin Renewal Spray between January 26, 2013 and the present.

64.     Excluded from the Subclasses are (a) any person who purchased the Products for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

65.     Plaintiffs reserve the right to amend the definition of the Subclasses if discovery or further investigation reveals that the Subclasses should be expanded or otherwise modified.

66.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  Class Members are so

numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members.  Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

67.    **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are limited to, the following:

a. What are the Keratindose Products comprised of chemically and do they contain any actual keratin;

b. What are the actual, known benefits of keratin, if any, on the restoration of human hair;

c. Whether Defendants' marketing, advertising, packaging, labeling, and/or other promotional materials for the Keratindose Products are deceptive;

d. Whether Defendants' acts, omissions or misrepresentations of material facts violate certain state deceptive practice acts, including those of New York and California;

e. Whether Defendants breached express warranties in connection with the Products;

f. Whether Defendants breached implied warranties in connection with the Products;

g. Whether Defendants' acts, omissions or misrepresentations of material facts constitute fraud;

h. Whether Plaintiffs and putative Class and Subclass Members have suffered an ascertainable loss of monies or property or other value as a result of Defendants' acts, omissions or misrepresentations of material facts;

i. Whether Defendants were unjustly enriched at the expense of Plaintiffs and putative Class and Subclass Members in connection with the Products;

j. Whether Plaintiffs and putative Class and Subclass Members are entitled to monetary damages and, if so, the nature of such relief; and

      k.   Whether Plaintiffs and putative Class and Subclass Members are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

68.     Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the putative Class and Subclasses, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Class and Subclasses as a whole.  In particular, Defendants have manufactured, marketed, advertised, distributed and sold Products that are deceptively misrepresented as containing keratin when, in fact, they do not.

69.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the claims of the Members of the Class and Subclasses, as each putative Class and Subclass Member was subject to the same uniform deceptive misrepresentation regarding the purported keratin content of the Products.  Plaintiffs share the aforementioned facts and legal claims or questions with putative Class and Subclass Members, and Plaintiffs and all putative Class and Subclass Members have been similarly affected by Defendants' common course of conduct alleged herein.  Plaintiffs and all putative Class and Subclass Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' deceptive misrepresentations regarding the purported keratin content of the Products, as alleged herein.

70.     **Adequacy – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiffs will fairly and adequately represent and protect the interests of the putative Class and respective Subclasses. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiffs and their counsel are committed to the vigorous prosecution of this action. Plaintiffs do not have any conflicts of interest or interests adverse to those of putative Class and Subclass Members.

71.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).**
Absent a class action, Class and Subclass Members will continue to suffer the harm described
herein, for which they would have no remedy.  Even if separate actions could be brought by
individual consumers, the resulting multiplicity of lawsuits would cause undue burden and
expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and
adjudications that might be dispositive of the interests of similarly situated consumers,
substantially impeding their ability to protect their interests, while establishing incompatible
standards of conduct for Defendants.  Accordingly, the proposed Class and Subclasses satisfy the
requirements of Fed. R. Civ. P. 23(b)(1).

72.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**
Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and all
Members of the Class and Subclasses, thereby making appropriate final injunctive relief and
declaratory relief, as described below, with respect to Class and Subclass Members as a whole.

73.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is
superior to any other available methods for the fair and efficient adjudication of the present
controversy for at least the following reasons:

    a.  The damages suffered by each individual putative Class and Subclass Member
        do not justify the burden and expense of individual prosecution of the
        complex and extensive litigation necessitated by Defendants' conduct;

    b.  Even if individual Class and Subclass Members had the resources to pursue
        individual litigation, it would be unduly burdensome to the courts in which the
        individual litigation would proceed;

    c.  The claims presented in this case predominate over any questions of law or
        fact affecting individual Class and Subclass Members;

    d.  Individual joinder of all putative Class and Subclass Members is
        impracticable;

e.  Absent a Class, Plaintiffs and putative Class and Subclass Members will
continue to suffer harm as a result of Defendants' unlawful conduct; and

f.  This action presents no difficulty that would impede its management by the
Court as a class action, which is the best available means by which Plaintiffs
and putative Class and Subclass Members can seek redress for the harm
caused by Defendants.

74.    In the alternative, the Class and Subclasses may be certified for the following

reasons:

a.  The prosecution of separate actions by individual Class and Subclass
Members would create a risk of inconsistent or varying adjudication with
respect to individual Class and Subclass Members, which would establish
incompatible standards of conduct for Defendants;

b.  Adjudications of individual Class and Subclass Members' claims against
Defendants would, as a practical matter, be dispositive of the interests of other
putative Class and Subclass Members who are not parties to the adjudication
and may substantially impair or impede the ability of other putative Class and
Subclass Members to protect their interests; and

c.  Defendants have acted or refused to act on grounds generally applicable to the
putative Class and Subclasses, thereby making appropriate final and injunctive
relief with respect to the putative Class and Subclasses as a whole.

### <u>COUNT I</u>
### Breach of Express Warranty
### N.Y. U.C.C. § 2-313
### (On behalf of the New York Subclass)

75.    Plaintiff Price repeats and realleges the allegations in paragraphs 1 through 74 as

if fully set forth herein.

76.    Plaintiff Price brings this cause of action on behalf of herself and the New York

Subclass against Defendants.

77.    Plaintiff Price and New York Subclass Members purchased the Matrix Biolage

Keratindose Products either directly from Defendants or through retailers such as Ulta, Walmart,

CVS, Target, Walgreens, and J.C. Penney, among others.

78.    Defendants are and were at all relevant times "merchants" under N.Y. U.C.C. § 2-

313.

79.     Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers expressly warranted that the Matrix Biolage Keratindose Products were fit for their intended purpose by making the express warranties that:

        a.   Keratindose Pro-Keratin + Silk Shampoo is formulated with Pro-Keratin;

        b.   Keratindose Pro-Keratin + Silk Conditioner is formulated with Pro-Keratin; and

        c.   Keratindose Pro-Keratin Renewal Spray is formulated with Pro-Keratin.

80.     Defendants made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff Price, New York Subclass Members and Defendants.

81.     In fact, the Matrix Biolage Keratindose Products are not fit for such purpose because each of the express warranties is a false and misleading misrepresentation.

82.     Defendants breached these warranties and/or contract obligations by placing the Products into the stream of commerce and selling them to consumers, when the Products do not contain keratin and/or confer the claimed benefits of keratin.  The absence of keratin renders the Products unfit for their intended use and purpose and substantially and/or completely impairs the use and value of the Products.

83.     The lack of keratin at issue herein existed when the Keratindose Products left Defendants' possession or control and were sold to Plaintiff Price and New York Subclass Members.  The absence of keratin was not discoverable by Plaintiff Price and New York Subclass Members at the time of their purchase of the Products.

84.     Plaintiff Price and the New York Subclass Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Keratindose Products if they knew the truth about the Products.

22

## COUNT II
**Breach of Contract/Common Law Warranty**
**(On behalf of the New York Subclass)**

85.     Plaintiff Price repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

86.     Plaintiff Price brings this cause of action on behalf of herself and the New York Subclass against Defendants.

87.     To the extent Defendants' commitment is deemed not to be a warranty under New York's Uniform Commercial Code, Plaintiff Price pleads in the alternative under common law warranty and contract law.

88.     Plaintiff Price and New York Subclass Members purchased the Keratindose Products either directly from Defendants or through retailers such as Ulta, Walmart, CVS, Target, Walgreens, and J.C. Penney, among others.

89.     Defendants expressly warranted that the Products were fit for their intended purpose in that the Products were formulated with Pro-Keratin.

90.     Defendants made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff Price, New York Subclass Members and Defendants.

91.     Defendants breached the warranties and/or contract obligation by placing the Products into the stream of commerce and selling them to consumers, when the Products do not contain keratin or the properties they were represented to possess.  Due to the absence of keratin, the Keratindose Products are unfit for their intended use and purpose.  The absence of keratin substantially and/or completely impairs the use and value of the Products.

92.     The absence of keratin at issue herein existed when the Keratindose Products left

Defendants' possession or control and were sold to Plaintiff Price and New York Subclass Members.  The absence of keratin and impaired use and value of the Keratindose Products were not discoverable by Plaintiff Price and New York Subclass Members at the time of their purchase of the Products.

93.     As a direct and proximate cause of Defendants' breach of contract, Plaintiff Price and the New York Subclass Members were harmed because they would not have purchased the Keratindose Products if they knew the truth about the Products.

## COUNT III
### Breach of Express Warranty
### (On behalf of the California Subclass)

94.     Plaintiff Chadwick repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

95.     Plaintiff Chadwick brings this cause of action on behalf of herself and the California Subclass against Defendants.

96.     Defendants manufactured, marketed, advertised, distributed and sold the Keratindose Products as part of their regular course of business.

97.     Defendants made affirmations of fact and promises on the Products' packaging and/or through the marketing and advertising described herein.  As described herein, Defendants expressly represented and warranted that:

   a.  Keratindose Pro-Keratin + Silk Shampoo is formulated with Pro-Keratin;

   b.  Keratindose Pro-Keratin + Silk Conditioner is formulated with Pro-Keratin; and

   c.  Keratindose Pro-Keratin Renewal Spray is formulated with Pro-Keratin.

98.     Defendants made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff Chadwick, California Subclass Members and Defendants.

99.     Plaintiff Chadwick and the California Subclass Members purchased the Keratindose Products either directly from Defendants or through retailers such as Ulta, Walmart, CVS, Target, Walgreens, and J.C. Penney, among others.

100.     Defendants breached the foregoing express warranties by placing the Keratindose Products into the stream of commerce and selling them to consumers, when the Products do not contain keratin or the properties they were represented to possess.  The absence of keratin rendered the Keratindose Products unfit for their intended use and purpose and substantially impaired the use and value of the Products.

101.     The absence of keratin at issue herein existed when the Keratindose Products left Defendants' possession or control and were sold to Plaintiff Chadwick and California Subclass Members.  The absence of keratin was not discoverable by Plaintiff Chadwick and California Subclass Members at the time of their purchase of the Products.

102.     As manufacturer, marketer, advertiser, distributer and seller of the Matrix Biolage Keratindose Products, Defendants are the *only* parties with knowledge and notice of the fact that the Products do not contain keratin.

103.     Plaintiff Chadwick and California Subclass Members were injured as a direct and proximate result of Defendants' breaches of warranties because they would not have purchased the Keratindose Products if the true facts had been known.  Specifically, Plaintiff Chadwick and California Subclass Members have suffered economic damages in connection with the purchase of the Products.

104.     As a result of Defendants' breaches of these warranties, Plaintiff Chadwick and California Subclass Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

**COUNT IV**
**Fraud**
**(On behalf of the Nationwide and/or State Subclasses)**

105.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 74 as if fully set forth herein.

106.     Plaintiffs bring this cause of action on behalf of themselves, the Class and/or the New York and California Subclasses against Defendants.

107.     As alleged herein, Defendants knowingly made material misrepresentations and omissions regarding the Keratindose Products on their website, in Product advertisements, and/or on the Product labeling and packaging.

108.     Defendants made these material misrepresentations and omissions in order to induce Plaintiffs and putative Class Members to purchase the Products.

109.     Rather than inform consumers that the Keratindose Products do not contain keratin and/or confer the claimed benefits of keratin, Defendants used the word "keratin" in the name of the Keratindose Product line and in the names of the individual Products in order to mislead consumers that the Products contain keratin and will confer the claimed benefits of keratin.  Defendants further misrepresented that the Products are formulated with Pro-Keratin.

110.     The Keratindose Products do not contain any keratin and are incapable of providing the claimed benefits of keratin.

111.     Defendants knew the Keratindose Products did not contain keratin and were

incapable of providing the claimed benefits of keratin, but nevertheless made such representations through its use of the word "keratin" in the name of the Product line and individual Products, as well as through the marketing, advertising and Product labeling. In reliance on these and other similar misrepresentations, Plaintiffs and putative Class Members were induced to, and did pay monies, to purchase the Keratindose Products.

112.   Had Plaintiffs known the truth about the Keratindose Products, including that they did not contain any keratin, they would not have purchased the Products.

113.   As a proximate result of the fraudulent conduct of Defendants, Plaintiffs and the putative Class paid monies to Defendants through their regular retail sales channels, to which Defendants are not entitled, and have been damaged in an amount to be proven at trial.

**COUNT V**
**Unjust Enrichment**
**(On behalf of the Nationwide Class and/or State Subclasses)**

114.   Plaintiffs repeat and reallege the allegations in paragraphs 1 through 74 as if fully set forth herein.

115.   Plaintiffs bring this cause of action on behalf of themselves, the Class and/or the New York and California Subclasses against Defendants.

116.   Plaintiffs and putative Class Members conferred a benefit on Defendants when they purchased Matrix Biolage Keratindose Products, of which Defendants had knowledge. By their wrongful acts and omissions described herein, including selling the Keratindose Products, which do not contain any keratin, Defendants were unjustly enriched at the expense of Plaintiffs and putative Class Members.

117.   Plaintiffs' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

118.    Defendants have profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and putative Class Members under circumstances in which it would be unjust for Defendants to be permitted to retain the benefit.  It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Keratindose Products.

119.    Plaintiffs and putative Class Members have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased the Keratindose Products on the same terms or for the same price had they known that the Products did not contain keratin and were not fit for their intended use.

120.    Defendants either knew or should have known that payments rendered by Plaintiffs and putative Class Members were given and received with the expectation that the Keratindose Products actually contained keratin and were capable of providing the claimed benefits of keratin as represented by Defendants in advertising, on Defendants' websites, and on Product labels and packaging.  It is inequitable for Defendants to retain the benefit of payments under these circumstances.

121.    Plaintiffs and putative Class Members are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants.

122.    When required, Plaintiffs and Class Members are in privity with Defendants because Defendants' sale of the Keratindose Products was either direct or through authorized sellers.  Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendants' agents for the purpose of the sale of the Keratindose Products.

123.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and putative Class Members are entitled to restitution of, disgorgement of,

and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

**COUNT VI**
**Violation of The California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**Unfair Business Acts and Practices Prong**
**(On Behalf of the California Subclass)**

124.    Plaintiff Chadwick repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

125.    Plaintiff Chadwick brings this cause of action on behalf of herself and the California Subclass against Defendants.

126.    Plaintiff Chadwick and California Subclass Members who purchased Defendants' Matrix Biolage Keratindose Products suffered a substantial injury by virtue of buying Products that misrepresented and/or omitted the true contents and benefits.  Had Plaintiffs and California Subclass Members known that Defendants' materials, advertisement and other inducements misrepresented and/or omitted the true contents and benefits of the Matrix Biolage Keratindose Products and that the Products did not contain keratin, they would not have purchased the Products.

127.    Defendants' actions alleged herein violate the laws and public policies of California and the federal government, as set out in the preceding paragraphs of this Complaint.

128.    There is no benefit to consumers or competition by allowing Defendants to deceptively market, advertise, package and label their Matrix Biolage Keratindose Products.

129.    Plaintiff Chadwick and the California Subclass Members who purchased Defendants' Products had no way of reasonably knowing that the Products were deceptively marketed, advertised, packaged and labeled and did not contain keratin.  Thus, California

Subclass Members could not have reasonably avoided the injury they suffered.

130.    The gravity of the harm suffered by Plaintiff Chadwick and California Subclass Members who purchased Defendants' Matrix Biolage Keratindose Products outweighs any legitimate justification, motive or reason for marketing, advertising, packaging and labeling the Products in a deceptive and misleading manner.  Accordingly, Defendants' actions are immoral, unethical, unscrupulous and offend the established public policies as set out in federal regulations and is substantially injurious to Plaintiff Chadwick and California Subclass Members.

131.    The above acts of Defendants, in disseminating said misleading and deceptive statements to consumers throughout the state of California, including to Plaintiff Chadwick and California Subclass Members, were and are likely to deceive reasonable consumers by obfuscating the true nature and lack of keratin in Defendants' Matrix Biolage Keratindose Products, and thus were violations of Cal Bus. & Prof. Code §§ 17500, *et seq*.

132.    As a result of Defendants' above unlawful, unfair and fraudulent acts and practices, Plaintiff Chadwick, on behalf of herself and all others similarly situated, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendants from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendants' wrongful conduct to the fullest extent permitted by law.  Misbranded cosmetic products cannot legally be manufactured, held, advertised, distributed or sold.  Thus, misbranded cosmetics have no economic value and are worthless as a matter of law, and purchasers of misbranded cosmetics are entitled to a restitution refund of the purchase price of the misbranded cosmetic.

**COUNT VII**
**Violation of The California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**Fraudulent Business Acts and Practices Prong**
**(On Behalf of the California Subclass)**

133.     Plaintiff Chadwick repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

134.     Plaintiff Chadwick brings this cause of action on behalf of herself and the California Subclass against Defendants.

135.     Such acts of Defendants as described above constitute a fraudulent business practice under Cal. Bus. & Prof. Code §§ 17200, *et seq*.

136.     As more fully described above, Defendants use the word "keratin" on the labeling and in the names of their Matrix Biolage Keratindose Products when, in fact, these Products contained no keratin.  Defendants' misleading marketing, advertising, packaging, and labeling of the Products are likely to, and do, deceive reasonable consumers.  Indeed, Plaintiff Chadwick was deceived about the content of keratin in Defendants' Matrix Biolage Keratindose Products, as Defendants' marketing, advertising, packaging, and/or labeling of these Products misrepresents and/or omits the true nature of the Products' contents and benefits.  Said acts are fraudulent business practices and acts.

137.     Defendants' misleading and deceptive practices caused Plaintiff Chadwick and California Subclass Members to purchase Defendants' Matrix Biolage Keratindose Products and/or pay more than they would have if they had they know the true nature of the contents of the Products and that they do not contain keratin.

138.     As a result of Defendants' above-described unlawful, unfair and fraudulent acts and practices, Plaintiff Chadwick, on behalf of herself and all similarly situated California

Subclass Members, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendants from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendants' wrongful conduct to the fullest extent permitted by law.  Misbranded cosmetic products cannot legally be manufactured, held, advertised, distributed or sold.  Thus, misbranded cosmetics have no economic value and are worthless as a matter of law, and purchasers of misbranded cosmetics are entitled to a restitution refund of the purchase price of the misbranded cosmetics.

**COUNT VIII**
**Violation Of The California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**Unlawful Prong**
**(On behalf of the California Subclass)**

139.    Plaintiff Chadwick repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

140.    Plaintiff Chadwick brings this cause of action on behalf of herself and the California Subclass against Defendants.

141.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Business & Professions Code § 17200.

142.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

143.    Civil Code § 1770, subsection (a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(7) prohibits a business from misrepresented the standard, quality, or grade of the Product.

144.    Civil Code § 1770, subsection (a)(5), prohibits Defendants from misrepresenting

32

the characteristics and/or ingredients of the Keratindose Products.

145.     As a result of the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiff Chadwick and California Subclass Members.  Specifically, Defendants have been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

146.     Through its unlawful acts and practices, Defendants have improperly obtained money from Plaintiff Chadwick and the California Subclass.  As such, Plaintiff Chadwick requests that this Court cause Defendants to restore this money to Plaintiff Chadwick and all California Subclass Members, and to enjoin Defendants from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiff Chadwick and the California Subclass may be irreparably harmed and/or denied an effective and complete remedy if such relief is not granted.

## COUNT IX
### Violation of The Unfair and Deceptive Trade Practices Act
### New York GBL § 349, *et. seq*.
### (On behalf of the New York Subclass)

147.     Plaintiff Price repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

148.     Plaintiff Price brings this cause of action on behalf of herself and the New York Subclass against Defendants.

149.     Defendants' foregoing acts and practices, including their omissions, were directed at consumers.

150.     Defendants' foregoing deceptive acts and practices, including their omissions, were material, in part, because they concerned an essential part of the Keratindose Products' ingredients and functionality.  Defendants omitted material facts regarding the Keratindose

Products by failing to disclose that the Keratindose Products do not contain any keratin.  Rather than disclose this information, Defendants named the Product line "Keratindose" and misrepresented that the Products were formulated with Pro-Keratin, and capable of providing a keratin treatment.

151.   The Keratindose Products contain no keratin and are incapable of providing a keratin treatment and/or the claimed benefits of keratin as represented by Defendants. Defendants did not disclose this information to consumers.

152.   Defendants' foregoing deceptive acts and practices, including their omissions, were and are deceptive acts or practices in violation of New York's General Business Law section 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, *et. seq.,* in that:

    a.   Defendants manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Products under the Keratindose Product line and name, when they knew, or should have known, that the Products did not contain keratin and could not provide a keratin treatment and/or the claimed benefits of keratin as represented by Defendants when used as intended;

    b.   Defendants knew the absence of keratin in the Keratindose Products was unknown to and would not be easily discovered by Plaintiffs and New York Subclass Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Products; and

    c.   Plaintiff Price and the New York Subclass Members were deceived by Defendants' failure to disclose and could not discover the absence of keratin in the Keratindose Products or that the Products could not provide the claimed benefits of keratin prior to purchasing the Products.

153.   Plaintiff Price and the New York Subclass Members suffered damages when they purchased the Keratindose Products.  Defendants' unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiffs and the New York Subclass Members who were unaware that the Keratindose Products did not contain keratin and could not provide a keratin treatment and/or the claimed benefits of keratin as represented when they purchased the Products.

154.   Defendants' foregoing deceptive acts and practices, including their omissions,

were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff Price and putative New York Subclass Members, would not have purchased their Keratindose Products had they known about the absence of keratin in the Products or the fact that the Products cannot provide a keratin treatment and/or the claimed benefits of keratin as represented by Defendants.

155.    As a direct and proximate result of Defendants' deceptive acts and practices, including their omissions, Plaintiff Price and New York Subclass Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

156.    In addition, Plaintiff Price and New York Subclass Members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

**COUNT X**
**Violation of The California False Advertising Law**
**Cal. Civ. Code §§ 17500, *et. seq.***
**(On behalf of the California Subclass)**

157.    Plaintiff Chadwick repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

158.    Plaintiff Chadwick brings this cause of action on behalf of herself and the California Subclass against Defendants.

159.    Plaintiffs and the Members of the California Subclass have standing to pursue a cause of action for false advertising under Bus. & Prof. Code §§ 17500, *et. seq.* because Plaintiffs and Members of the California Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

160.    Specifically, Defendants engaged in the following deceptive and misleading

35

conduct in violation of the California False Advertising Law:

    a.   Defendants manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Products under the Keratindose Product line and name, when they knew, or should have known, that the Products did not contain keratin and could not provide a keratin treatment and/or the claimed benefits of keratin as represented by Defendants when used as intended;

    b.   Defendants knew the absence of keratin in the Keratindose Products was unknown to and would not be easily discovered by Plaintiffs and New York Subclass Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Products; and

    c.   Plaintiff Chadwick and the California Subclass Members were deceived by Defendants' failure to disclose and could not discover the absence of keratin in the Keratindose Products or that the Products could not provide the claimed benefits of keratin prior to purchasing the Products.

161.    Defendants' foregoing deceptive acts and practices, including their omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff Chadwick and putative California Subclass Members, would not have purchased their Keratindose Products had they known about the absence of keratin in the Products or the fact that the Products cannot provide a keratin treatment and/or the claimed benefits of keratin as represented by Defendants.

162.    Defendants' actions violate Cal. Bus. & Prof. Code §§ 17500, *et seq*.

163.    As a direct and proximate result of Defendants' actions, as set forth herein, Defendants have received ill-gotten gains and/or profits, including but not limited to money from Plaintiff Chadwick and California Subclass Members who paid for the Keratindose Products. Therefore, Defendants have been unjustly enriched.

164.    Plaintiff Chadwick and California Subclass Members seek injunctive relief, restitution, and disgorgement of Defendants' ill-gotten gains as provided for by Cal. Bus. & Prof. Code § 17535. 309.  Plaintiff Chadwick and California Subclass Members seek injunctive relief to prohibit Defendants from continuing to sell the Keratindose Products, and to prevent

Defendants from engaging in these wrongful practices in the future.  No other adequate remedy at law exists. If an injunction is not ordered, Plaintiff Chadwick and California Subclass Members will suffer irreparable harm and/or injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated Class and Subclass Members, pray for relief and judgment, including entry of an order:

A.     Declaring that this action is properly maintained as a class action, certifying the proposed Class and Subclasses, appointing Plaintiffs as Class Representatives and appointing Plaintiffs' counsel as Class Counsel;

B.     Directing that Defendants bear the costs of any notice sent to the Class and Subclasses;

C.     Awarding Plaintiffs and Class and Subclass Members actual damages, restitution and/or disgorgement, except that Plaintiffs do not seek these remedies at this time with respect to the California Consumer Legal Remedies Act;

D.     Awarding Plaintiffs and Class and Subclass Members statutory damages, as provided by the applicable state consumer protection statutes invoked above;

E.     Enjoining Defendants from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

F.     Awarding Plaintiffs and Class and Subclass Members restitution of the funds that unjustly enriched Defendants at the expense of Plaintiffs and Class and Subclass Members, except that Plaintiffs do not seek these remedies at this time with respect to the California Consumer Legal Remedies Act;

G.     Awarding Plaintiffs and Class and Subclass Members pre- and post-judgment

interest, except that Plaintiffs do not seek these remedies at this time with respect to the California Consumer Legal Remedies Act;

H.     Awarding attorneys' fees and litigation costs to Plaintiffs and Class and Subclass Members; and

I.     Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.


Dated: January 26, 2017                    Respectfully submitted,

                                   **JTB LAW GROUP, LLC**
                                   Jason T. Brown
                                   Patrick S. Almonrode
                                   155 2nd Street, Suite 4
                                   Jersey City, NJ 07302
                                   Telephone: (877) 561-0000
                                   Fax: (855) 582-5297
                                   jtb@jtblawgroup.com
                                   patalmonrode@jtblawgroup.com


                                   **MORGAN & MORGAN**
                                   **COMPLEX LITIGATION GROUP**
                                   Rachel Soffin (Florida Bar No. 018054)*
                                   Jonathan B. Cohen (Florida Bar No. 0027620)*
                                   201 N. Franklin St., 7th Floor
                                   Tampa, FL 33602
                                   Telephone: (813) 223-5505
                                   Facsimile: (813) 222-2434
                                   rsoffin@forthepeople.com
                                   jcohen@forthepeople.com


                                   **BARBAT, MANSOUR & SUCIU PLLC**
                                   Nick Suciu III*
                                   1644 Bracken Rd.
                                   Bloomfield Hills, Michigan 48302
                                   Telephone:  (313) 303-3472
                                   nicksuciu@bmslawyers.com

**SOMMERS SCHWARTZ P.C.**
Jason Thompson*
Lance Young*
Rod Johnston*
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone:  (248) 355-0300
jthompson@sommerspc.com
lyoung@sommerspc.com
rjohnston@sommerspc.com


**GREG COLEMAN LAW**
Greg Coleman*
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
greg@gregcolemanlaw.com


*Pending pro hac vice application*

*Attorneys for Plaintiffs and putative Class Members*