**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| BRANDI PRICE and CHRISTINE CHADWICK, on behalf of themselves and all others similarly situated, | ) ) ) ) | CASE NO. 1:17-cv-00614-LGS |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| L'OREAL USA, INC. and MATRIX ESSENTIALS LLC, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES
AND APPOINTMENT OF CLASS COUNSEL**

i

**TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................................1

II.  SUMMARY OF COMMON FACTS ...................................................................................3

    A.  The Products at Issue ...............................................................................................3

    B.  The Products Uniformly Do Not Contain Keratin ...................................................4

    C.  The Product Labels Uniformly Include Misrepresentations.....................................4

III. LEGAL STANDARDS FOR CLASS CERTIFICATION ....................................................6

IV.  THE PROPOSED CLASSES SATISFY THE REQUIREMENTS OF RULE 23(a) .................7

    A.  Numerosity Is Satisfied ...........................................................................................7

    B.  Commonality Is Satisfied ........................................................................................8

    C.  Typicality Is Satisfied ...........................................................................................10

    D.  Plaintiffs and Their Counsel Will Adequately Represent the Classes ...................11

        1.  Plaintiffs' Interests Do Not Conflict with the Interests of the Classes.............11

        2.  Plaintiffs' Counsel Are Qualified to Serve as Class Counsel ........................12

    E.  The Classes Are Easily Ascertainable ...................................................................13

V.   THE PROPOSED CLASSES SATISFY RULE 23(b)(3) ..................................................14

    A.  Common Questions of Law or Fact Predominate ..................................................14

        1.  The Elements of the Nationwide Fraud Claim Can Be Established Through

            Common Proof...............................................................................................15

        2.  The Elements of the California Claims Can Be Established Through

            Common Proof...............................................................................................20

            a.  California Breach of Express Warranty ..................................................20

            b.  California Unfair Competition Law (UCL) and False Advertising Law (FAL)........21

i.  UCL Unfair Prong ................................................................................21

ii.  UCL Unlawful Prong ..........................................................................23

iii.  UCL Fraud Prong & False Advertising Law (FAL) ...........................24

3.  The Elements of the New York Claims Can Be Established Through ...........................26

Common Proof .................................................................................................26

a.  New York GBL §§ 349 .........................................................................26

b.  New York Breach of Express Warranty ..............................................27

c.  New York Breach of Contract/Common Law Warranty .....................28

4.  Damages Are Measureable on a Classwide Basis ...............................................29

B.  Class Litigation Is Superior to Other Methods of Adjudication ...............................33

VI. CONCLUSION .....................................................................................................34

## **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ............................................................................... 6, 16

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
568 U.S. 455 (2013) .............................................................................. 7, 17

*Berger v. Home Depot USA, Inc.,*
741 F.3d 1061 (9th Cir. 2014) ................................................................ 28

*Berryman v. Merit Property Mgmt., Inc.*
152 Cal. App. 4th 1544 (Cal. App. 4th 2007) ..................................... 3, 25

*Brecher v. Republic of Arg.,*
806 F.3d 22 (2d Cir. 2015) ..................................................................... 15

*Buller v. Sutter Health,*
74 Cal. Rptr. 3d 47 (Cal. Ct. App. 2008) ............................................... 25

*Clearmont Prop., LLC v. Eisner,*
872 N.Y.S.2d 725 (N.Y. App. Div. 2009) ............................................. 33

*Comcast Corp. v. Behrend,*
133 S. Ct. 1426 (2013) ...................................................................... 34, 35

*Comm. on Children's Television, Inc. v. General Foods Corp.,*
35 Cal.3d 197 (1983) .............................................................................. 28

*Durell v. Sharp Healthcare,*
183 Cal.App.4th 1350 (2010) ................................................................. 24

*Ebin v. Kangadis Food Inc.,*
297 F.R.D. 561 (S.D.N.Y. 2014) ..................... 2, 10, 12, 15, 16, 18, 19, 20, 21, 32

Eisen v. Carlisle & Jacquelin,
417 U.S. 156 (1974) .................................................................................. 7

*Fogarazzao v. Lehman Bros., Inc.,*
232 F.R.D. 176 .......................................................................................... 11

*Freeman v. Time, Inc.,*
68 F.3d 285 (9th Cir. 1995)) ................................................................... 28

*Galvan v. KDI Distrib.*,
   2011 U.S. Dist. LEXIS 127602 (C.D. Cal. Oct. 25, 2011) ........................................................ 24

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
   317 F.R.D. 374 (S.D.N.Y. 2016) ............................................................. 1, 2, 7, 9, 16, 35, 36, 37

*Gortat v. Capala Bros.*,
   No. 07-3629, 2012 WL 1116495 .................................................................................................. 6

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968)......................................................................................................... 12

*Gucciardo v. Titanium Construction Services, Inc.*,
   No. 16 Civ. 1113 (LGS), 2017 WL 3738777 ...................................................................... 7, 8, 15

*Guido v. L'Oreal, USA, Inc.*,
   No. 11-01067, 2014 WL 6603730 (C.D. Cal. July 24, 2014).............................. 2, 10, 28, 30, 36

*In re Am. Exp. Merchants' Litig.*,
   667 F.3d 204 (2d Cir. 2012)........................................................................................................... 6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29.............................................................................................................................. 11, 13

*In re IPO Secs. Litig.*,
   471 F.3d at 41 ................................................................................................................................ 7

*In re Nassau Cty. Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006)......................................................................................................... 17

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009). .................................................................................................. 17

*In re Petrobras Sec. Litig.*,
   —— F.3d ——, No. 16 Civ. 1914, 2017 WL 2883874 (2d Cir. July 7, 2017).......................... 15

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2016) ........................................................... 1, 10, 14, 30, 33, 35, 38

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ...................................................................................................... 26, 27, 28, 29

*In re Toyota Motor Corp.*,
   790 F.Supp.2d 1152 (C.D. Cal. May 13, 2011)........................................................................... 28

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013) .................................................................... 8

*Johns v. Bayer Corp.*,
  280 F.R.D. 551 (S.D. Cal. 2012) ........................................................... 12

*Kasky v. Nike, Inc.*,
  27 Cal.4th 939 (2002) ........................................................................... 28

*Kraft v. Staten Island Boat Sales, Inc.*,
  715 F. Supp. 2d 464 (S.D.N.Y. 2010) .................................................. 31

*Leider v. Ralfe*,
  387 F. Supp. 2d 283 (S.D.N.Y. 2005) ............................................. 30, 35

*Lueras v. BAC Home Loans Servicing, LP*,
  221 Cal. App. 4th 49 (Cal. App. 4th 2013) .......................................... 25

*Lucas v. Breg, Inc.*,
  2016 U.S. Dist. LEXIS 137117 (S.D. Cal. Sept. 30, 2016) ................... 28

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ................................................................ 7, 9

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ..................................................... 8, 17, 18

*Moran v. Prime Healthcare Management, Inc.*,
  3 Cal. App. 5th 1131 (Cal. App. 4th 2016) .......................................... 25

*Morrissey v. Nextel Partners, Inc.*,
  72 A.D.3d 209, 895 N.Y.S.2d 580 (App. Div. 2010) ........................... 30

*NSA Invs. II L.L.C. v. SeraNova, Inc.*,
  227 F.Supp.2d 200 (D. Mass. 2002) ..................................................... 32

*Parker v. J.M. Smucker Co.*,
  2013 U.S. Dist. LEXIS 120374 (N.D. Cal. Aug. 23, 2013) ................... 23

*Pelman v. McDonald's Corp.*,
  396 F.3d 508 (2d Cir. 2005) ................................................................. 30

*Phillips v. Apple Inc.*,
  No. 15-CV-04879-LHK, 2016 WL 5846992 (N.D. Cal. Oct. 6, 2016) ..... 29

*Pub. Emples. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
    277 F.R.D. 97 (S.D.N.Y. 2011) ................................................................. 11

*Promuto v. Waste Management, Inc.*,
    44 F. Supp. 2d 628 (S.D.N.Y.1999) ......................................................... 33

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) ................................................................... 27

*Rikos v. Procter & Gamble Co.*,
    No. 14-4088, 2015 WL 4978712 (6th Cir. Aug. 20, 2015) ......................... 2

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) .................................................................... 12

*Rodriguez v. It's Just Lunch, Int'l*,
    300 F.R.D. 125 (S.D.N.Y. 2014) ............................... 18, 19, 20, 21, 22

*Rush v. Nutrex Research, Inc.*,
    No. C 12-01060 LB, 2012 WL 2196144 (N.D. Cal. June 13, 2012) .......... 26

*Saunders*,
    27 Cal. App. 4th 838-39 (1994) ............................................................... 26

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ................................................................. 26

*Seekamp v. It's Huge, Inc.*,
    No. 09-CV-00018 LEK, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) .......... 20, 34

*Seijas v. Republic of Argentina*,
    606 F.3d 53 (2d Cir. 2010) .................................................................... 38,39

*Shahriar v. Smith & Wollensky Rest. Grp.*,
    659 F.3d 234 (2d Cir. 2011) ...................................................................... 8

*Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009) ............................... 26

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ............................................................ 22, 34

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) .................................................................... 6, 17

*Thomas v. Olin Mathieson Chemical Corp.*,
    255 Cal. App. 2d 806 (1967) ................................................................... 23

*Wal–Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ................................................................................. 7, 9

*Weinstat v. Dentsply Int'l,*
  180 Cal. App. 4th 1213, 1228 (2010) ......................................................... 23

*Williams v. Gerber Prods. Co.,*
  552 F.3d 934 (9th Cir. 2008) ................................................................ 27, 28

*Yamada v. Nobel Biocare Holding AG,*
  275 F.R.D. 573, 576 (C.D. Cal. Aug. 12, 2011) .................................... 23, 24

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 .................................................... 22, 24, 26

Cal. Bus. & Prof. Code §§ 17500 .................................................... 22, 24, 25

California's Unfair Competition Law and/or New York GBL §349 ............. 17, 18, 19, 29, 30, 31

N.Y.U.C.C. § 2-313 ............................................................................. 31, 32

**Rules**

Fed. R. Civ. P. 23 ...................................................... 11, 13, 16, 38, 39

**Treatises**

W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:54 at 205 (5th ed. 2012) ........................ 34, 35

Wright, Miller, & Kane, FED. PRAC. & PROC. CIV. § 1781 ........................................ 34

## I.   INTRODUCTION

This case is ideally suited for class treatment. Defendants, L'Oréal USA, Inc. and Matrix Essentials LLC (collectively, "**Defendants**"), manufacture, distribute and sell **Keratin**dose Pro-Keratin + Silk Shampoo, Pro-Keratin + Silk Conditioner, and Pro-Keratin Renewal Spray as a three-part system (collectively, the "**Products**" or "**Keratindose Products**"). On the front, center and back of every Product label, Defendants unambiguously and uniformly represent to consumers that the **Keratin**dose Products are formulated with keratin. However, through the course of this litigation, Defendants have been forced to admit that, contrary to the Product names and labels, the **Keratin**dose Products do not contain – and never have contained – keratin.

Defendants intentionally named the Products "**Keratin**dose" because they know that labels are important to consumers. Simply stated, the marketing industry is founded on the concept that product labels convey specific messages to consumers, and that consumers will choose a product based on its label. Thus, a reasonable consumer would understand and expect that a product named "**Keratin**dose" would actually contain keratin and provide the claimed benefits of keratin.

Consumer protection claims based on uniform product labels, similar to the present case, are regularly certified both within this Circuit and across the country. *See, e.g., Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 385 (S.D.N.Y. 2016) (certifying class action involving labels on certain Aveeno Active Naturals products) (Román, J.); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) (certifying class action involving labels on grass seed) (Briccetti, J.); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014) (certifying class action involving labels on olive oil) (Rakoff, J.); *Rikos v. Procter & Gamble Co.*, No. 14-4088, 2015 WL 4978712 (6th Cir. Aug. 20, 2015) (certifying

class action based on labels on nutritional supplement); *Guido v. L'Oreal, USA, Inc.*, No. 11-01067, 2014 WL 6603730, at *19 (C.D. Cal. July 24, 2014) (certifying class action based on hair product labels); *Guido v. L'Oreal, USA, Inc.*, No. 11-1067, 2013 WL 3353857, at *19 (C.D. Cal. July 1, 2013) (certifying class action based on hair product labels).

Here, Plaintiffs' allegations and claims are suitable for class treatment and can be proven using common evidence because "product specific labeling and packaging claims…do not require proof as to individual understanding and can be judged based on the objective standard of proof." *Goldemberg*, 317 F.R.D. at 389. Plaintiffs and Class Members' claims all arise from Defendants' uniform course of conduct, the facts relevant to the resolution of Plaintiffs' and Class Members' claims are common, and the allegations can be proven on a classwide basis using common proof in a single trial. The basis of Plaintiffs' claims is simple. The Products, which uniformly include and emphasize the **Keratin**dose name on the front and center of every Product label, do not actually contain keratin. There is no mystery to unravel when the *name of the product is itself a misrepresentation*, and the misrepresentation – the word "keratin" on the **Keratin**dose Product labels – is emphasized in bold lettering on both the front and back labels of every Product. Thus, at a trial on the merits, Plaintiffs will show that the Product name itself is a misnomer and the Product labels are deceptive to reasonable consumers.

Class certification is further appropriate because the damages that stem directly from Defendants' unlawful conduct can be measured and assessed at trial. Plaintiffs can and will prove that all consumers paid a price premium as a result of Defendants' misrepresentations regarding the **Keratin**dose Products. *See* Exhibit 1, Declaration of Rachel Soffin ("Soffin Dec."); (Soffin Dec., Ex. A, Initial Expert Report of Dr. Jean-Pierre H. Dubé); (Soffin Dec., Ex.

B, Rebuttal Expert Report of Dr. Jean-Pierre H. Dubé). The Classes[1] that Plaintiffs seek to certify are as follows:

> **Nationwide Class**:
> All persons in the United States and its territories who purchased Matrix Biolage Advanced Keratindose Pro-Keratin + Silk Shampoo, Pro-Keratin + Silk Conditioner, and/or Pro-Keratin + Silk Renewal Spray between January 26, 2013 and the present ("Nationwide Class");
>
> **New York Class**:
> All persons who reside in the state of New York and purchased Matrix Biolage Advanced Keratindose Pro-Keratin + Silk Shampoo, Pro-Keratin + Silk Conditioner, and/or Pro-Keratin + Silk Renewal Spray between January 26, 2013 and the present ("New York Class"); and
>
> **California Class**:
> All persons who reside in the state of California and purchased Matrix Biolage Advanced Keratindose Pro-Keratin + Silk Shampoo, Pro-Keratin + Silk Conditioner, and/or Pro-Keratin + Silk Renewal Spray between January 26, 2013 and the present ("California Class").

## II.   SUMMARY OF COMMON FACTS

### A.  The Products at Issue

In February 2013, Defendants launched a product line called Matrix Biolage Advanced **Keratin**dose Pro-Keratin + Silk. (Soffin Dec., Ex. C, Bacallao Dep. at 22:14-18). This product line includes Matrix Biolage Advanced **Keratin**dose Pro-Keratin + Silk Shampoo, Pro-Keratin + Silk Conditioner, and Pro-Keratin + Silk Renewal Spray. (Soffin Dec., Ex. C, Bacallao Dep. at 22:19-23:3). According to Defendants, the target market for the **Keratin**dose Products is women who have overprocessed hair resulting from salon treatments, such as keratin treatment, coloring,

---

[1] Excluded from the Classes are (a) any person who purchased the Products for resale and not for personal or household use, (b) any person who signed a release of any Defendants in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendants or any entity in which Defendants have a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendants, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

highlighting, and straightening. (Soffin Dec., Ex. C, Bacallao Dep. at 49:21-51:4). Each Product

within this line is typically priced at $20.00 or more and, as part of the Matrix Biolage Advanced

line, is priced higher than other products and lines offered by Defendants. (Soffin Dec., Ex. C,

Bacallao Dep. at 47:11-17; 55:14-19). It is Defendants' intent that the three Products be

purchased and used together as a system. (Soffin Dec., Ex. C, Bacallao Dep. at 45:15-24). As

described below, all three of these Products have the same challenged representation (i.e., the

name of the Product itself) on the front and back Product labels, leading reasonable consumers to

believe that the Products contain keratin. All three of these Products have been consistently

available and sold to consumers since the launch of the product line in 2013. (Soffin Dec., Ex. C,

Bacallao Dep. at 27:4-10; 29:23-30:3; 31:7-11).

### B.  The Products Uniformly Do Not Contain Keratin

Despite being named "**Keratin**dose," the **Keratin**dose Products do not contain keratin.

(Soffin Dec., Ex. C, Bacallao Dep. at 143:12-144:12). In fact, they never have. (Soffin Dec., Ex.

C, Bacallao Dep. at 25:14-25). Through this litigation, Defendants have admitted that keratin is

not an ingredient of the **Keratin**dose Products, and that the ingredients of the Products have

never changed since the product line was launched in 2013. (Soffin Dec., Ex. C, Bacallao Dep. at

25:14-25; 143:8-14). Accordingly, every consumer who has ever purchased a **Keratin**dose

Product is similarly situated, as they all paid for Products that uniformly do not contain keratin.

### C.  The Product Labels Uniformly Include Misrepresentations

Notwithstanding the fact that the **Keratin**dose Products do not contain – and never have

contained – keratin, Defendants unambiguously and uniformly label the **Keratin**dose Products in

a way that blatantly suggests to reasonable consumers that keratin is an ingredient. Indeed,

despite the complete absence of keratin in the **Keratin**dose Products, the name of the Product

line and the front and back Product labels have prominently and repeatedly featured the word "keratin" since their inception. As shown below, the word "keratin" in the **Keratin**dose Product labels is bolded, at the center of the front Product labels.



(Soffin Dec., Ex. D, MTX_KTDS00000382). In addition to this bold representation, the word "keratin" appears on the shampoo label 11 times and in multiple languages, on the conditioner label 13 times and in multiple languages, and on the renewal spray label 14 times and in multiple languages. Every use of the word "keratin" is bolded so that this word stands out from all other words used on the Product labels. In addition to being bolded, the word "keratin" repeatedly appears in all capital letters on the back labels of the Products.

The names of the **Keratin**dose Products have been uniformly consistent since the launch of the product line in 2013. (Soffin Dec., Ex. C, Bacallao Dep. at 26:16-20; 30:24-31:3). Further, there have been no material changes to the Product labels or their text since the Products were introduced to the consumer marketplace. (Soffin Dec., Ex. C, Bacallao Dep. at 24:21-26:7; 28:8-19; 28:20-29:10; 30:13-23). In fact, the only change to the Products since their inception was an alteration of the shampoo and conditioner bottle shape and size in late 2014 or early 2015. *Id.*

In short, every consumer who has ever purchased a **Keratin**dose Product has been uniformly subjected to Defendants' misrepresentations in the form of the name of the product line, the names of the individual Products, and the front and back of the Product labels.

### III.    LEGAL STANDARDS FOR CLASS CERTIFICATION

"Supreme Court precedent recognizes that the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages due to any single individual or entity are too small to justify bringing an individual action." *Gortat v. Capala Bros.*, No. 07-3629, 2012 WL 1116495, at *3 (E.D.N.Y. Apr. 3, 2012) (quoting *In re Am. Exp. Merchants' Litig.,* 667 F.3d 204, 214 (2d Cir. 2012)). "'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

Although the Court must conduct a rigorous analysis in assessing the propriety of class certification, "[t]he Second Circuit gives Rule 23 a 'liberal rather than restrictive construction, and courts are to adopt a standard of flexibility.'" *Gucciardo v. Titanium Construction Services, Inc.,* No. 16 Civ. 1113 (LGS), 2017 WL 3738777, at *3, (S.D.N.Y Aug. 30, 2017) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, (1974). It is well-established in this Circuit that while "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Goldemberg*, 317 F.R.D. at 385 (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013); citing *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351 (2011)). Thus, "a

court 'should not assess any aspect of the merits *unrelated* to a Rule 23 requirement.'" *Goldemberg*, 317 F.R.D. at 385 (citing *In re IPO Secs. Litig.,* 471 F.3d at 41) (emphasis added).

Additionally, the Second Circuit has recognized that fraud claims based on uniform misrepresentations to all class members "are appropriate subjects for class certification" because uniform misrepresentations create "no need for a series of mini-trials." *In re US Foodserv. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002)).

## IV.    THE PROPOSED CLASSES SATISFY THE REQUIREMENTS OF RULE 23(a)

### A.  Numerosity Is Satisfied

"In the Second Circuit, 'numerosity is presumed where a putative class has forty or more members.'" *Gucciardo*, 2017 WL 3738777, at *3 (quoting *Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 252 (2d Cir. 2011)). Here, ███████████ of the Products were sold nationwide to salons for resale to consumers during the class period. (Soffin Dec., Ex. E, MTX_KTDS00000406); (Soffin Dec., Ex. C, Bacallao Dep. at 92:25-93:9; 101:7-15). This includes sales within the state of New York totaling more than ███████, and sales within the state of California totaling more than ████████. (Soffin Dec., Ex. F, MTX_KTDS00000392); (Soffin Dec., Ex. C, Bacallao Dep. at 116:19-22). As part of their ordinary course of business, Defendants obtain "sell-thru" data from certain salons indicating the quantity of Products sold by these salons to consumers. (Soffin Dec., Ex. C, Bacallao Dep. at 98-99). The "sell-thru" data indicates that these particular salons sold more than ████████ units of the Products to consumers during the class period. (Soffin Dec., Ex. E, MTX_KTDS00000406). Accordingly, there are far more than forty (40) consumers who purchased the Products during the class period, thereby satisfying the numerosity requirement.

### B.  Commonality Is Satisfied

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." To satisfy the commonality requirement, Plaintiffs must "demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349-50 (internal quotation marks omitted). The commonality requirement may be met where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A.* 126 F.3d at 377. Indeed, the Supreme Court has instructed that Rule 23(a)(2) can be satisfied where "[e]ven a single question" of law or fact" is common to the members of the class. *Dukes*, 564 U.S. at 369.

In *Goldemberg*, the court certified a class action involving Aveeno Active Naturals products where the named plaintiffs asserted that all class members were subjected to the same deceptive representation, including "the labeling of Aveeno products with the Active Naturals trademark," which led consumers to believe that the products were, in fact, natural when the majority of the ingredients were synthetic and artificial. *Goldemberg*, 371 F.R.D. at 387. In assessing the commonality element, the court found that the question of whether a given product's advertising, including a product's labeling and packaging, is misleading can be measured pursuant to an objective standard, i.e., whether it is likely to mislead a reasonable consumer acting reasonably under the circumstances. *Id.* at 389. Thus, "[a]ssuming the product and its labeling and packaging remains constant and is uniform between consumers, then the only question is how such packaging would have influenced a consumer under the objective test." *Id.* Thus, the *Goldemberg* court found that the product specific labeling and packaging claims did not require proof as to individual understandings of the Active Naturals labeling, and could be judged using an objective standard of proof. *Id.*  The court also found that materiality of

the deceptive representation was likewise subject to objective proof. *Id.* Thus, the court noted that factual distinctions between individual class members did not defeat a finding of commonality, including, for example, whether "some consumers…purchased the product because they liked the color of the bottle, without regard to the Active Naturals labeling, and will continue purchasing the product for that reason." *Id.* at 399. *See also Guido v. L 'Oreal, USA, Inc.,* No. 11 Civ. 1067 (CAS) (JCX), 2013 WL 3353857, at *5 (C D. Cal. July 1, 2013) (certifying class action under New York's GBL and finding commonality met because "Serum was packaged and sold uniformly across the nation," which allowed common questions regarding the deceptive nature of the packaging to be resolved "in one stroke"); *Ebin*, 297 F.R.D. at 565 (common question in a consumer class action is whether a product's manufacturer "defrauded purchasers" by making a specific claim on the product's label); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 405 ("A common question with respect to the second theory of liability is whether the [label] claim is false and/or misleading. The answer to this question is common to all class members, and is apt to drive the resolution of this litigation.").

One common question that applies to every claim of every Class Member in this matter is whether the words that appear prominently on every label of every Product, including the Product name **Keratin**dose, are deceptive, unfair, unlawful or misleading to reasonable consumers under California's Unfair Competition Law and/or New York GBL §349. Additional common questions include: (1) whether Defendants' packaging, labeling and/or sale of the **Keratin**dose Products, as described herein, is a violation of California's False Advertising Law; (2) whether a reasonable consumer would expect the **Keratin**dose Products to contain keratin; (3) whether Defendants breached express warranties in connection with the Products; (4) whether Defendants' packaging, labeling and/or sale of the **Keratin**dose Products constitutes a

breach of contract or common law warranty; and (5) whether Defendants' packaging, labeling and/or sale of the **Keratin**dose Products, as described herein, constitutes fraud.

### C.  Typicality Is Satisfied

Rule 23(a)(3) requires that the named plaintiffs' claims be "typical" of the class. Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement is not demanding." *Pub. Emples. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 107 (S.D.N.Y. 2011); *see also, e.g., Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (same). The requirement is met when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Balderramo v. Go N.Y. Tours Inc.,* 2017 WL 2819863, at *3 (S.D.N.Y. June 28, 2017) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)); *see also Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968) (to deny class certification "because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle … would destroy much of the utility of Rule 23."). Consumers of the same product, exposed to the same labels and packaging, will have almost entirely the same claims with, at most, "minor variations" in the facts surrounding their purchase of the products. *See Ebin,* 297 F.R.D. at 566–67 (plaintiff purchasers of mislabeled olive oil products were typical of other potential class members despite any differences relating to their individual purchasing decisions); *Johns v. Bayer Corp.,* 280 F.R.D. 551, 557 (S.D. Cal. 2012) (typicality met where plaintiffs and proposed class had the same claims arising out of defendant's marketing campaign for men's vitamins).

Here, Plaintiffs' claims are typical of Class Members' claims because they arise out of the same course of conduct by Defendants and are based on the same legal theories. Through the Product names and labels, Defendants uniformly misrepresent to consumers that the **Keratin**dose Products are formulated with keratin when they are not. This forms the basis of the fraud, warranty, and New York and California consumer protection claims. Plaintiffs have been injured in the same manner as Class Members in that they all bought the Products that did not contain keratin and, accordingly, could not provide the claimed benefits of keratin. Plaintiffs' claims are therefore typical of the claims of the Nationwide Class, New York Class and California Class.

### D.  Plaintiffs and Their Counsel Will Adequately Represent the Classes

The adequacy requirement is met when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d at 35.[2] Both factors are met here.

#### 1.  Plaintiffs' Interests Do Not Conflict with the Interests of the Classes

Neither Plaintiffs nor their counsel have any interest antagonistic to absent Class Members. Plaintiffs, like each absent Class Member, have a strong interest in proving Defendants' common course of conduct, establishing their unlawfulness, demonstrating falsity, and obtaining redress. As Plaintiffs prove their own claims, they will also prove the claims of absent Class Members.

Plaintiffs have demonstrated their commitment to pursuing these claims on behalf of

---

[2] Moreover, a finding that proposed class representatives satisfy the typicality inquiry constitutes "strong evidence that their interests are not antagonistic to those of the class …." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008).

absent Class Members, and have been actively involved in this litigation since the outset. (Soffin Dec. at ¶ 5). Specifically, Plaintiffs have reviewed and approved the complaints, responded to written discovery requests, produced documents relating to their claims, and prepared and sat for lengthy depositions. *Id*. Each Plaintiff has demonstrated an understanding of both the basis of the claims and the roles of a class representative. (Soffin Dec., Ex. H, Chadwick Dep. at 18-19; 25-30); (Soffin Dec., Ex. I, Price Dep. at 18:1-25; 26-27; 66:1-25; 85-86). As such, they are more than adequate Class Representatives. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406-07 ("Lead plaintiffs have each demonstrated their commitment to pursuing these claims by responding to extensive written discovery requests and sitting for lengthy depositions. Further, each lead plaintiff testified [she] understands the requirements of serving as lead plaintiff, and wishes to move forward. Finally, nothing in the record suggests lead plaintiffs' interests are antagonistic to those of other class members.").

### 2. Plaintiffs' Counsel Are Qualified to Serve as Class Counsel

Plaintiffs' counsel, the law firms of Morgan & Morgan Complex Litigation Group, Barbat, Mansour & Suciu PLLC, Greg Coleman Law, Sommers Schwartz P.C., and JTB Law Group, LLC (collectively, "**Proposed Class Counsel**"), have extensive experience prosecuting class actions and other complex litigation. (Soffin Dec., ¶¶ 6-7; Ex. G, Firm Biographies). Moreover, Proposed Class Counsel have demonstrated their willingness to prosecute this litigation vigorously through their expenditure of substantial resources, investigating the subject claims, drafting the initial and amended complaints, opposing Defendants' motion to dismiss, conducting significant discovery, retaining a qualified expert, and preparing and filing this Motion for Class Certification. (Soffin Dec., ¶ 8). For these reasons, the adequacy requirement is satisfied. Pursuant to Rule 23(g), upon certification of the Classes, the Court should appoint

Morgan & Morgan Complex Litigation Group, Barbat, Mansour & Suciu PLLC, Greg Coleman Law, Sommers Schwartz P.C., and JTB Law Group, LLC as Class Counsel.

### E.  The Classes Are Easily Ascertainable

The Second Circuit requires that the class be ascertainable, but recognizes that this is a "modest threshold requirement [that] will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *Gucciardo*, 2017 WL 3738777, at *6 (quoting *In re Petrobras Sec. Litig.*, —— F.3d ——, No. 16 Civ. 1914, 2017 WL 2883874, at *12 (2d Cir. July 7, 2017)). It expressly declined to adopt the heightened theory that ascertainability also requires, at the certification stage, a showing of administrative feasibility. *In re Petrobras Sec. Litig.*, 2017 WL 2883874, at *9. In its reasoning, the Second Circuit found that the district court had properly determined the class to be ascertainable because the requirement "is designed only to prevent the certification of a class whose membership is truly indeterminable." *Id.* at *10 (quoting *Ebin*, 297 F.R.D. at 567). Indeed, "the touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* (quoting *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015)) (internal quotation marks omitted). "However, 'freestanding administrative feasibility' is not required, only 'that a class be defined using objective criteria that establish a membership with definite boundaries.'" *Id.* (quoting *In re Petrobras Sec. Litig.*, 2017 WL 2883874, at *8).

The ascertainability requirement is met here. The Class definitions are imminently objective as they are simply comprised of every person who purchased one of the Products either nationwide, in New York, or in California during the class period. Simply stated, a person either purchased one of the Products or did not. Thus, the Classes are sufficiently definite. That all

13

Class Members may not have receipts or other documentary proof is no moment. *See Goldemberg*, 317 F.R.D. at 398 (holding that "denial of class certification in consumer protection cases like these on the basis of ascertainability would severely contract the class action mechanism as a means for injured consumers to seek redress under statutes specifically designed to protect their interests") (citing *Ebin,* 297 F.R.D. at 567). Here, to establish Class membership, a person may: (1) provide a claim form and receipt; (2) provide the serial number on the Product; or (3) submit a sworn affidavit identifying their purchase of the Product. Indeed, courts in this District have routinely accepted these forms of proof of class membership in similar contexts. *See Ebin*, 297 F.R.D. at 567; *Goldemberg*, 317 F.R.D. at 398. Accordingly, the implied ascertainability requirement is satisfied given that Class Members can be objectively identified.

## V.      THE PROPOSED CLASSES SATISFY RULE 23(b)(3)

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both are met here.

### A.  Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires that the party proposing a class action establish that issues common to the class predominate over the individual issues of particular class members. *See Amchem*, 521 U.S. at 622-623. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore*, 306 F.3d at 1252. While the predominance

inquiry is more demanding than the commonality determination required by Rule 23(a), predominance does not require a plaintiff to show that there are no individual issues. *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009). The court must only find that the issues subject to generalized proof outweigh those issues that are subject to individualized proof. *See In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227-28 (2d Cir. 2006). Further, predominance under Rule 23(b)(3) requires only "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459. Here, common issues overwhelmingly predominate over any individual issues. Indeed, the overarching common question is whether naming and labeling the Products "**Keratin**dose," despite the absence of any keratin in the Products, is deceptive. As described below, this is a binary issue, the resolution of which will be determinative for the Classes as a whole because deceptiveness is evaluated pursuant to an objective reasonable consumer standard. Thus, a jury will decide, for each Class in its entirety, whether the **Keratin**dose label on each of the Products is deceptive or fraudulent. *See Sykes*, 285 F.R.D. at 293 (certifying GBL § 349 claim where "[e]very potential class member's claim arises out of defendants' uniform, widespread practice" and, therefore, whether this practice violates GBL § 349 "does not depend on individualized considerations").

### 1. The Elements of the Nationwide Fraud Claim Can Be Established Through Common Proof

Plaintiffs Price and Chadwick purchased the **Keratin**dose Products and assert Count IV on behalf of the Nationwide Class. As shown below, courts within this Circuit have held that the basic elements of fraudulent misrepresentation are the same across the 50 states.[3] In particular,

---

[3] *See Hart v. BHH, LLC*, No. 15-cv-4804, 2017 WL 2912519, at *8 (S.D.N.Y. July 7, 2017) (certifying nationwide fraud class despite variations in state law); *Ebin*, 297 F.R.D. at 564 (same); *Rodriguez*, 300 F.R.D. at 140-41 (same);

the plaintiff must show that (1) the defendant made a material misrepresentation, with (2) the intent to defraud, and (3) the plaintiff relied on the misrepresentation to her detriment, including that she suffered an injury proximately caused by the misrepresentation. *See Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 139 (S.D.N.Y. 2014); *Ebin*, 297 F.R.D. at 564.

The Second Circuit has held that the predominance requirement is met for claims sounding in fraud that are based on uniform representations made to all members of the class:

> Fraud actions must … be separated into two categories: fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations. The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof.

*Moore*, 306 F.3d at 1253. Here, because Defendants uniformly misrepresented to all Class Members that the Products contain keratin[4]—including by using the word "keratin" on the shampoo label 11 times and in multiple languages, on the conditioner label 13 times and in multiple languages, and on the renewal spray label 14 times and in multiple languages—this action is an "appropriate subject[] for class certification because the standardized misrepresentations may be established by generalized proof." *Id.* Further, every use of the word "keratin" is bolded so that it stands out from all other words on the Product labels. In addition to being bolded, the word "keratin" repeatedly appears in capital letters on the back labels of the Products. Finally, the Products uniformly include and emphasize the **Keratin**dose name on the front and center of every Product label and unambiguously and uniformly represent to consumers that the **Keratin**dose Products are formulated with keratin. Defendants' core representations

---

*Spencer v. Hartford Fin. Svcs. Grp. Inc.*, 256 F.R.D. 284, 300-01 (D. Conn. 2009) (same); *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 305-06 (E.D.N.Y. 2006) (same).

[4] Whether that representation was true or false turns entirely on generalized evidence concerning whether the **Keratin**dose Products do, in fact, contain keratin. As Defendants admitted during the 30(b)(6) deposition that keratin is not a listed ingredient in any of the Products, the Product labels are literally false. (Soffin Dec., Ex. C, Bacallao Dep. at 25:14-25; 143:8-144:12).

concerning the name and nature of the **Keratin**dose Products were made to all Class Members in a materially uniform fashion,[5] making the issue appropriate for adjudication on a classwide basis. *See Ebin*, 297 F.R.D. at 569 ("[B]ecause defendant uniformly misrepresented its pomace oil to be 100% Pure Olive Oil to all class members, this action with its standardized misrepresentations established by generalized proof is appropriate for class certification.").

Class Members' reliance on Defendants' misrepresentations can similarly be demonstrated on a classwide basis through generalized proof:

> There is no blanket rule in the Second Circuit that "a fraud class action cannot be certified when individual reliance will be an issue." Certification may be appropriate as long as plaintiffs can prove reliance "through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue)." … "In light of this [Second Circuit] case law, many courts in this Circuit ... have held that reliance may be proved through circumstantial evidence that plaintiffs would not have purchased a product but for a defendant's uniform misrepresentations ... about that product."

*Rodriguez*, 300 F.R.D. at 139 (citations omitted0. For example, a misrepresentation may be "'so fundamental,' that it is reasonable to 'infer[],' not only that defendants intended for their representations to induce plaintiffs' reliance, but that plaintiffs in fact relied on those representations in becoming … customers"). *Id.* (citations and internal quotation marks omitted); *see also Hart*, 2017 WL 2912519, at *8 (pest repellent allegedly did not repel pests); *Seekamp v. It's Huge, Inc.*, No. 09-CV-00018 LEK, 2012 WL 860364, at *10 (N.D.N.Y. Mar. 13, 2012) ("Though it is true … that each proposed class member may have opted to purchase the [anti-theft security device] for different reasons, it is equally clear that every plaintiff would have relied on the implicit representation of the ATSD's legality and beneficialness in deciding whether to purchase it.").

---

[5] The names of the **Keratin**dose Products have been uniformly consistent since the launch of the product line in 2013. (Soffin Dec., Ex. C, Bacallao Dep. at 26:16-20; 30:24-31:3). Further, there have been no material changes to the Product labels or their text since the Products were introduced to the consumer marketplace. (Soffin Dec., Ex. C, Bacallao Dep. at 24:21-26:7; 28:8-19.28:20-29:10; 30:13-23).

*Ebin* is particularly on point because there, like here, the fundamental misrepresentation at issue was the actual name of the product itself. 297 F.R.D. at 564. In *Ebin*, plaintiffs asserted a cause of action for fraud and moved to certify a nationwide class where the product at issue was labeled "100% Pure Olive Oil," but was, instead, an industrially processed substance known as "pomace" oil. *Id*. Before certifying a nationwide fraud class, the court considered defendant's argument that the predominance requirement was not satisfied. *Id*. at 568. Specifically, defendant argued that any determination of whether a consumer was actually harmed by its label is individualized. *Id*. Defendant asserted that many class members purchased the product for reasons unrelated to the label (such as taste, price, or the container's shape or color) and, thus, did not suffer any damages. *Id*. at 568-69. Plaintiffs replied, and the court agreed, that where the challenged misrepresentation—i.e., "100 Pure Olive Oil"—is the name of the product itself, class members necessarily had to rely on it. *Id*. at 569.

Here, as in the aforementioned cases, including *Ebin* and *Rodriguez*, Defendants' uniform misrepresentations concerning the name and nature of the **Keratin**dose Products were so fundamental to the Products themselves that any purchaser would necessarily rely on them. *Rodriguez*, 300 F.R.D. at 139. By naming the product line "**Keratin**dose" and prominently placing and emphasizing the **Keratin**dose name on the front and center of every Product label, and reiterating the word "keratin" throughout the front and back labels, Defendants, in effect, defined the Products. It is thus inconceivable that Class Members did not rely on Defendants' misrepresentations since the *name of the **Keratin**dose Products is itself a misrepresentation*. (Soffin Dec., Ex. H, Chadwick Dep. at 76:6-16) (Plaintiff Chadwick decided to purchase the **Keratin**dose Product because of the "name and the price" and understood the Product to contain

"[a] dose of keratin" based on the label).[6] However, contrary to Defendants' representations that the Products contain keratin, none of the Products' listed ingredients are keratin, keratin derivatives, or hydrolyzed keratin. (Soffin Dec., Ex. J, Expert Report of Dr. Mark Van Dyke at p. 6). Moreover, the Products could not provide the claimed benefits of keratin because "[n]one of the [Products'] listed ingredients have the capability to recapitulate the native structure of keratin proteins in the human hair fiber." *Id.*

Finally, state law variations do not preclude a finding of predominance of common issues. In *Ebin*, discussed above, the court found that New York law governed the common law claims and that, even if the court needed to apply the law of numerous states, common issues still predominated. *Ebin*, 297 F.R.D. at 570. The court surveyed the potentially applicable state laws and concluded that there was no material difference that would affect the merits of the class's common law claims at trial. *Id.*; *see also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013) ("[T]he crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues."); *Rodriguez*, 300 F.R.D. at 141 ("A claim … can implicate common issues and be litigated collectively, despite the existence of state law variations, so long as the elements of the claim … are substantially similar and differences fall into a limited number of predictable patterns which can be readily handled by special interrogatories or special verdict forms.") (quoting *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 76 (E.D.N.Y. 2004)). Certification of a nationwide fraud class is thus appropriate here.

---

[6] Plaintiffs can also demonstrate by common evidence that Defendants were aware of their misrepresentations and that they intended for the same to induce Plaintiffs' reliance. (Soffin Dec., Ex. C, Bacallao Dep. at 25:14-25; 49:21-51:4; 143:12-144:12) (acknowledging that the **Keratin**dose Products *never contained keratin*, yet marketing the Products to women with overprocessed hair).

**2. The Elements of the California Claims Can Be Established Through   Common Proof**

Plaintiff Chadwick purchased **Keratin**dose Shampoo and Conditioner in California and asserts Count III (Breach of Express Warranty), Counts VI-VIII (Violation of the "Unfair," "Unlawful" and "Fraud" prongs of California Unfair Competition Law, Cal. Bus. & Prof. Code §17200), and Count X (Violation of the California False Advertising Law, Cal. Civ. Code §§ 17500), on behalf of the California Class. Each element of these claims can be established through common classwide proof.

**a. California Breach of Express Warranty**

Count III asserts claims against Defendants for breach of express warranty under California law. See Am. Compl. ¶¶ 96-107. This claim requires proof of an "affirmation of fact or promise" or "description of goods," which was "part of the basis of the bargain," and breach. *See Weinstat v. Dentsply Int'l*, 180 Cal. App. 4th 1213, 1228 (2010) (reversing order decertifying breach of express warranty class and noting that the UCC does not require proof of reliance on specific promises made by the seller). Express warranties can be created by representations on a product's label when the claim on the label amounts to more than mere puffery. *See Parker v. J.M. Smucker Co.*, 2013 U.S. Dist. LEXIS 120374, at *20 (N.D. Cal. Aug. 23, 2013). Furthermore, "where a purchaser of a product relies on a representation on a label or in advertising material, recovery from the manufacturer may be allowed on a theory of express warranty without a showing of privity." *Thomas v. Olin Mathieson Chemical Corp.*, 255 Cal. App. 2d 806, 811 (1967).

Here, Defendants' labeling of the Products clearly and expressly warranted that:

- **Keratin**dose Pro-Keratin + Silk Shampoo is formulated with Pro-Keratin;

- **Keratin**dose Pro-Keratin + Silk Conditioner is formulated with Pro-Keratin; and

- **Keratin**dose Pro-Keratin Renewal Spray is formulated with Pro-Keratin.

*See* Am. Compl. ¶ 99. Plaintiff Chadwick will be able to prove this claim with the common evidence discussed above. *See Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573, 576, 581 (C.D. Cal. Aug. 12, 2011) (certifying breach of express warranty claim); *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602 (C.D. Cal. Oct. 25, 2011) (finding common issues predominate on express warranty claim).

### b.  California Unfair Competition Law (UCL) and False Advertising Law (FAL)

Counts VI-VIII assert claims against Defendants for violations of the "unfair," "unlawful," and "fraud" prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (hereinafter, the "**UCL**"). "The UCL does not proscribe specific acts, but broadly prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising …'" *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1359 (2010) (quoting Cal. Bus. & Prof. Code § 17200). Count X asserts claims against Defendants for violations of California's False Advertising Law, Cal. Civ. Code §§ 17500, *et seq.* (hereinafter, the "**FAL**"). Plaintiff Chadwick's claims under the UCL and FAL come down to a single issue that is susceptible to common proof: whether Defendants' deceptive Product labels are likely to mislead a reasonable consumer.

### i.  UCL Unfair Prong

Count VI asserts claims under the "unfair" prong of the UCL. *See* Am. Compl. ¶¶ 127-135. Currently, California courts are split over which test applies to actions brought under this prong of the UCL, so courts in the Ninth Circuit have utilized three different tests to determine

whether a practice is unfair under the UCL. *Moran v. Prime Healthcare Management, Inc.*, 3 Cal. App. 5th 1131, 1150-52 (Cal. App. 4th 2016). One states that "an unfair business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 81 (Cal. App. 4th 2013). A second rule provides "the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory, or regulatory provisions." *Buller v. Sutter Health*, 74 Cal. Rptr. 3d 47, 55 (Cal. Ct. App. 2008). The third test holds that "an act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could have reasonably avoided." *Berryman v. Merit Property Mgmt., Inc.* 152 Cal. App. 4th 1544, 1544 (Cal. App. 4th 2007).

Here, Defendants disseminated misleading and deceptive statements in the form of the Product labels to consumers throughout the state of California, including Plaintiff Chadwick and putative Class Members. These statements were likely to deceive reasonable consumers by obfuscating the true nature and lack of keratin in Defendants' **Keratin**dose Products, and thus were obvious violations of Cal. Bus. & Prof. Code §§ 17500, *et seq. See* Am. Compl. ¶¶ 16-60. Defendants' actions directly contravene clear and well-established public policy against misleading statements in labeling and marketing, and profiting from the same as a result of such deceptive marketing and business practices. Defendants' intentional misconduct is injurious to consumers in that they are deceived into purchasing the Products, which are not as labeled. Am. Compl. ¶¶ 54, 60. Defendants' intentionally misleading actions are unquestionably immoral, unethical, oppressive, and unscrupulous, and they are in no way beneficial to consumers or competitors. Finally, there is simply no way that a reasonable consumer could have avoided

injury in this instance because consumers have no reasonable way of knowing whether the **Kerantin**dose Products actually contain keratin at the time of purchase. In short, Defendants' conduct, as described above, qualifies as "unfair" under each of the three aforementioned tests.

### ii.  UCL Unlawful Prong

Count VIII asserts claims under the "unlawful" prong of the UCL. *See* Am. Compl. ¶¶ 142-149. Unlawful business acts include "any practices forbidden by law." *Rush v. Nutrex Research, Inc.*, No. C 12-01060 LB, 2012 WL 2196144, at *8 (N.D. Cal. June 13, 2012). "Thus, an unlawful business practices claim under section 17200 'borrows violations of other laws and treats them as unlawful practices independently actionable under section 17200 *et seq*.'" *Id.* (quoting *Saunders*, 27 Cal. App. 4th 838-39 (1994)).

Plaintiff Chadwick must only "show that members of the public are likely to be deceived" by Defendants' representations. *See Williams*, 552 F.3d at 938. This is an objective test that is subject to common proof. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009)). Here, Plaintiff Chadwick and the California Class can establish through common proof that the phrase "**Keratin**dose Pro-Keratin + Silk" appeared on every Product sold by Defendants, representing that the Products were formulated with keratin and could provide the claimed benefits associated with keratin. Plaintiff Chadwick and the California Class will prove that promise was false by presenting common (and undisputed) evidence that the Products do not contain any keratin. As shown more fully below, Plaintiff Chadwick actually relied on this label in deciding to purchase Defendants' Product.

"California has created what amounts to a *conclusive presumption* that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury…" *Pulaski*

& *Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015) (emphasis added). Plaintiff Chadwick suffered a loss when she purchased the Products in reliance on Defendants' labeling, as the Products did not, in fact, contain keratin. Furthermore, the proof needed to establish these violations is not based on any individualized factor and is common to the California Class.

### iii.  UCL Fraud Prong & False Advertising Law (FAL)

Count VII asserts a claim against Defendants for violation of the "fraud" prong of the UCL and Count X asserts a claim against Defendants for violations of California's FAL. *See* Am. Compl. ¶¶ 136-141; 160-167, respectively. Both claims require proof that (i) the class representative's reliance on the labeling claims resulted in injury-in-fact, *In re Tobacco II Cases*, 46 Cal.4th at 327-28, and (ii) "members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "[A]ny violation of the false advertising law…necessarily violates the UCL." *Id.* (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002)); *Comm. on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 210 (1983). Whether a Defendant's advertisement and/or claim will likely deceive is governed by the "reasonable consumer" test. *Id.* (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer.").

"When claims are based on fraudulent or unlawful conduct, Plaintiffs 'must plead and prove actual reliance to satisfy the standing requirement' of the UCL …" *In re Toyota Motor Corp.*, 790 F.Supp.2d 1152, 1168 (C.D. Cal. May 13, 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th at 328). Proof of reliance by absent class members is <u>not</u> required. *See, e.g., Guido v. L'Oreal, USA, Inc.*, 2013 U.S. Dist. LEXIS 94031, at *13, *28-29 (C.D. Cal. July 1, 2013)

("under the UCL and FAL, only the named plaintiffs are required to establish reliance and causation, not each class member."). Additionally, "[a] showing of individualized reliance is not required under the UCL and FAL [as long as there is] a showing 'that members of the public are likely to be deceived.'" *Lucas v. Breg, Inc.*, 2016 U.S. Dist. LEXIS 137117, at *37 (S.D. Cal. Sept. 30, 2016) (quoting *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014)). "To establish actual reliance, the plaintiff must allege that 'the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct.'" *Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016 WL 5846992, at *6 (N.D. Cal. Oct. 6, 2016) (quoting *In re Tobacco II Cases*, 46 Cal.4th at 326). While the plaintiff must show that the misrepresentation "played a substantial part" in the plaintiff's decision-making, the plaintiff is not required to show that the misrepresentation was "the sole or even the predominant or decisive factor influencing [her] conduct." *Id.*

Plaintiff Chadwick can prove individual injury and reliance through her own testimony. (Soffin Dec., Ex. H, Chadwick Dep. at 169:6-25) (Ms. Chadwick's injury amounts to, in part, the additional amount of money she spent on the Product compared to another non-**Keratin**dose product "[b]ecause it falsely says there's [keratin] in it and it's not"); *Id.* at 76:6-16 (Ms. Chadwick decided to purchase the **Keratin**dose Product because of the "name and the price" and understood the Product to contain "[a] dose of keratin" based on the label). Plaintiff Chadwick unequivocally relied on the label on Defendants' Products indicating the presence of keratin and, as a direct result of this misrepresentation, was injured. Whether "members of the public are likely to be deceived" is an objective test that is subject to common proof, and can be established with the evidence described above.

### 3. The Elements of the New York Claims Can Be Established Through Common Proof

#### a. New York GBL §§ 349

Plaintiff Price alleges violations of New York Gen. Bus. Law ("GBL") § 349 on behalf of the New York Class. The Second Circuit has held that "[t]o state a claim under § 349, a plaintiff must allege that: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). GBL § 349 does not require proof of reliance by any consumer on a misrepresentation. *See Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). Rather, "[d]eceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." *Spagnola*, 574 F.3d at 74; *see also Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005).

The Section 349 claim can be proven with common proof and thus should be certified under Rule 23(b)(3). *See Morrissey v. Nextel Partners, Inc.*, 72 A.D.3d 209, 895 N.Y.S.2d 580 (App. Div. 2010) (certifying class under GBL § 349); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 480-83 (C.D. Cal. 2012) (finding common issues predominate as to injury on plaintiffs' GBL claims because "the issue of whether plaintiffs and class members would have purchased [the product] had they known" advertising was false "can be established with common proof); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409 (in action involving GBL claim of deceptive labeling, finding "[c]lasswide evidence will be used to establish whether Scotts's labeling of EZ Seed was false, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances"). Here, every consumer was presented with the same materially false and misleading representations on the labels: that the Products were formulated with keratin. Whether these representations are false or misleading turns on generalized evidence. In addition, there are

no individual issues with respect to showing the availability of statutory damages pursuant to GBL §349(h). *See* GBL § 349(h) ("any person who has been injured by reason of any violation of this section may bring an action … to recover his actual damages or fifty dollars, whichever is greater[.]"). Since Plaintiff Price has shown an injury, she and Members of the New York Class are also entitled to the statutory damages of $50 each. The claim should therefore be certified under Rule 23(b)(3), on behalf of the New York Class.

### b. New York Breach of Express Warranty

Plaintiff Price also seeks to certify a breach of express warranty claim on behalf of the New York Class. An express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y.U.C.C. § 2-313(1)(a). "In order to demonstrate that an express warranty was created under New York law, a plaintiff must prove that the statement falls within the definition of warranty, that she relied on it, and that it became part of the basis for the bargain." *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010) (internal quotation marks omitted). However, in a claim for breach of an express warranty, the requirement of reliance is subsumed into the question of whether the warranty was part of the basis of the bargain, and there is a *presumption* that a seller's affirmations go to the basis of the bargain. *See* N.Y.U.C.C. § 2-313 Cmt. 3 ("In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement."); *see also, e.g.*, *Hart*, 2017 WL 2912519, at *8 (certifying multistate class, including New York, for breach of express warranty, and stating that "[f]or product labeling cases such as this, reliance and causation are generally established through the *presumption* that a customer would not have

purchased the product for any other reason than the advertised one. In other words, all class members 'necessarily had to rely on' the uniform misrepresentations when purchasing the product.") (emphasis added; quoting *Ebin*, 297 F.R.D. at 569).

Here, the labels on each and every **Keratin**dose Product, as named, describe them as formulated with keratin or "pro-keratin," and as conferring the claimed benefits of keratin. Common proof will show that these affirmations "relate[] to the goods and become[] part of the basis of the bargain" for purchasers. N.Y.U.C.C. § 2-313(1)(a). Reliance will be demonstrated through common proof because "as a practical matter, proof of reliance [under New York law] amounts to proof of the existence of an express warranty." *NSA Invs. II L.L.C. v. SeraNova, Inc.*, 227 F.Supp.2d 200, 203-04 (D. Mass. 2002) (applying New York Law). Thus, the remaining elements can be established through common evidence that: (1) the express warranties were on the label of every Product; (ii) each misrepresentation was material; and (iii) the Products did not contain keratin as warranted. The breach of express warranty claim should thus be certified under Rule 23(b)(3) on behalf of the New York Class.

### c. New York Breach of Contract/Common Law Warranty

Plaintiff Price also seeks to certify a claim for breach of contract or common law warranty on behalf of the New York Class. The elements of these claims are similar. *Compare Clearmont Prop., LLC v. Eisner*, 872 N.Y.S.2d 725 (N.Y. App. Div. 2009) ("The elements of a cause of action for breach of contract are (1) formation of a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage."). *Promuto v. Waste Management, Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y.1999) ("Under New York common law, upon showing that: (1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which

warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant, plaintiff is entitled to be indemnified for any damages incurred as a result of such breach.").

These common law claims are pled in the alternative to the express warranty claim, and can be established through the same common proof. Thus, to the extent that Defendants' commitments on their Product labels are deemed not to be a warranty under the N.Y.U.C.C. and thereby prevent certification of the express warranty claim, these common law claims should be certified under Rule 23(b)(3) on behalf of the New York Class. Further, contract claims similar to those made by Plaintiff Price are routinely certified as class actions in New York. *E.g., In re Scotts EZ Seed Litig.*, 304 F.R.D. at 411 (certifying New York breach of contract claim in action involving deceptive representations regarding grass seed) (citing *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004)); *Seekamp*, 2012 WL 860364 (certifying breach of contract class action involving deceptive representations about anti-theft device).

### 4. Damages Are Measureable on a Classwide Basis

At class certification, Plaintiffs must "establish[] that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). Plaintiffs' method for calculating damages on a classwide basis must be consistent with their theory of liability by "measur[ing] only those damages attributable to that theory." *Id*. Plaintiffs and putative Class Members were injured as a result of their purchases of the Products, which have the same challenged representations on the front and center of the Product labels – i.e., the name of the product itself – as well as the same challenged representations on the back of the Product labels. Further, when issues of liability can be determined with classwide evidence, the predominance standard is generally satisfied even if damages are not provable in the aggregate.

*See* Advisory Committee's 1966 Notes on Fed. Rule Civ. Proc. 23, 28 U.S.C. App. at 141 ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by the individuals within the class."); Wright, Miller, & Kane, FED. PRAC. & PROC. CIV. § 1781, at 235-37; W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:54 at 205 (5th ed. 2012) ("individual damage[s] calculations should not scuttle class certification under Rule 23(b)(3)"). Nonetheless, at the class certification stage, "Plaintiffs are not required to set forth their final suggested protocol for how damages should be calculated. Rather, they need only show that the methodologies that they propose are not so insubstantial as to amount to no method at all." *Leider v. Ralfe*, 2004 WL 173330, at *13 (S.D.N.Y. Jul. 30, 2004) (internal quotations and citations omitted). It is well established in the Southern District of New York that "[n]othing in *Comcast* requires an expert to perform his analyses at the [ ] certification stage." *Goldemberg*, 317 F.R.D. at 394 (quoting *In re Scotts*, 304 F.R.D. at 413). To demonstrate how the Court could determine damages after liability is established, Plaintiffs have proposed a workable damages model through their expert, Dr. Jean-Pierre H. Dubé. Dr. Dubé is the Sigmund E. Edelstone Professor of Marketing at the University of Chicago Booth School of Business, and holds a Doctorate of Philosophy in Economics, as well as an Honors Bachelor of Science in Quantitative Methods in Economics. (Soffin Dec., Ex. A, Initial Report of Dr. Jean-Pierre Dubé). Dr. Dubé's research focuses on topics related to consumer demand for branded goods on the demand side, and firms' pricing, advertising and branding decisions on the supply side. (*Id*. at ¶ 10). As set forth in his Initial Report, Dr. Dubé will conduct a conjoint analysis to measure (1) the incremental consumer willingness-to-pay for the Products due to the challenged keratin language on the labels, and (2) the price premium

charged for the Products due to the misrepresentations regarding keratin on the Product labels. (Soffin Dec., Ex. A, Initial Expert Report of Dr. Jean-Pierre Dubé at ¶ 3); (Soffin Dec., Ex. B, Rebuttal Expert Report of Dr. Jean-Pierre Dubé at ¶¶ 4-5, 8-9, 11). The price premium that Dr. Dubé details, once calculated, may be applied nationwide, and to New York and California sales of the Products in order to arrive at the amount Class Members were overcharged. This approach provides an efficient and accurate method of calculating classwide damages, which resulted from a common misrepresentation and can be calculated using common evidence.

In a case based on facts strikingly similar to the one at bar, when asked to exclude Dr. Dubé's opinions, a court in this District approved Dr. Dubé's damages model, which is the same model proposed in this case. *Goldemberg*, 317 F.R.D. at 395-96. In *Goldemberg*, Dr. Dubé's damages model "propos[ed] to more accurately calculate the portion of the product's value associated with the deceptive claim." *Goldemberg*, 317 F.R.D. at 394. In doing so, the Court found that the damages model was acceptable and *exceeded* what was necessary for class certification purposes.

> The model proposed by Plaintiffs actually attempts to more accurately compute damages and happens to calculate a more generic price premium along the way. Dubé Rebuttal Report, ¶ 7(iv) ("my proposed measure is a more comprehensive measure of [c]lass-wide damages than the price premium"), Dubé Rebuttal Report, ¶ 18 ("Even though my proposed method does compute the price premium, [my report] does not propose to use the price premium alone as the measure of [c]lass-wide damages," because that "could be considered an incomplete measure of [c]lasswide damages").) In any event, the Court need only decide if the proposal is capable of matching the liability case to the damages case, which it certainly appears to be able to do.

*Id*. at 394. Here too, Dr. Dubé offers a damages model that inarguably provides a basis for calculating damages on a classwide basis. Dr. Dubé's measure of damages "is…based on a widely-accepted methodology in microeconomics that can be found in peer-reviewed, published

articles in the leading scientific journals in economics and quantitative marketing," and is also widely accepted in the legal community. *See Guido*, 2014 WL 6603730, at *6 (certifying class where expert proposed using conjoint analysis).

In his Initial Report, Dr. Dubé summarizes how his damages model may be used to calculate damages for the Classes as follows:

> In determining a measure of classwide damages, the objective consists of predicting the classwide economic value in dollars that would have been obtained from in-salon hair product purchases "but for" the Challenged Claims on the packaging of the Challenged Products. Suppose that a legal conclusion is established that deems the Challenged Claims to be false, misleading and/or deceptive, requiring Defendants to remove the Challenged Claims from the packaging of the Challenged Products. Damages can then be assessed by comparing the classwide economic value obtained from the currently available set of products versus the counterfactual classwide economic value that would have been obtained with the Challenged Claims removed from the packaging of the Challenged Products.

(Soffin Dec., Ex. A, Initial Report of Dr. Jean-Pierre Dubé at ¶ 27); (Soffin Dec., Ex. B, Rebuttal Report of Dr. Jean-Pierre Dubé at ¶ 8). As discussed above, Defendants' deceptive conduct affects the Classes as a whole and Dr. Dubé has taken this into account in crafting his damages model. (Soffin Dec., *see generally*, Ex. A, Initial Expert Report of Dr. Dubé); (Soffin Dec., Ex. B, Rebuttal Expert Report of Dr. Dubé). In his Rebuttal Report, Dr. Dubé again confirms that the willingness-to-pay measure of Classwide damages "has its roots in the Nobel prize winning research of Sir John Richard Hicks (Hicks 1939), and remains a viable and accepted method," and that his damages model is robust and "the proposed method ties the economic damages back to the plaintiff's theory of liability." (Soffin Dec., Ex. B, Rebuttal Report of Dr. Dubé at ¶¶ 34-38). When both of Dr. Dubé's Reports are examined in conjunction with each other, it is clear that this Court should reach the same conclusion as in *Goldemberg*, namely that "the Court need

only rely on the report, and find it reliable, for the limited proposition that a price premium attributable to the products can eventually be determined. The Court finds the report sufficiently reliable to inform it of that potential." *Goldemberg*, 317 F.R.D. at 396. Additionally, as Dr. Dubé indicates in detail in his Rebuttal Report, all of the objections raised by Defendants' experts misunderstand the nature of the damages model or are based on erroneous applications of economic principles. (Soffin Dec., *see generally*, Ex. B, Rebuttal Expert Report of Dr. Dubé at ¶¶ 12-86). Because a court in this District has already recognized the efficacy and propriety of Dr. Dubé's damages analysis in an almost identical context, the same result should be reached here. Plaintiffs have offered a reasonable model for calculating damages on a classwide basis such that the Court should grant their motion for class certification.

### B. Class Litigation Is Superior to Other Methods of Adjudication

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy." The Court must consider (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). Here, each of the factors weighs in favor of certification. Plaintiffs seek certification pursuant to Rule 23(b)(3) for small monetary claims. Thus, each Class Member's interest in bringing her or his own case is negligible and economically nonsensical, as the fees and litigation costs would easily outweigh any potential recovery for Products that cost approximately $22.00 each. When, as here, "proceeding individually would be prohibitive for class members with small claims ... the class action device is frequently superior to individual actions." *In re Scotts*

*EZ Seed Litig.*, 304 F.R.D. at 415 (citing *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) ("Where proceeding individually would be prohibitive due to the minimal recovery, the class action device is frequently superior to individual actions.")); *see also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130-31 ("Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery. Here, substituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of 'time, effort and expense, and promote uniformity of decision.'") (quoting Fed. R. Civ. P. 23 advisory committee's notes)). Further, Plaintiffs are unaware of any other litigation concerning Class Members' claims, and it is desirable to concentrate litigation of the claims in one forum.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this Motion for Class Certification, Appointment of Class Representatives and Appointment of Class Counsel.

Dated: January 5, 2018                    Respectfully submitted,

**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**

*/s/ Rachel Soffin*
Rachel Soffin (*pro hac vice*)
Jonathan B. Cohen (*pro hac vice*)
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
rsoffin@forthepeople.com
jcohen@forthepeople.com

34

**BARBAT, MANSOUR & SUCIU PLLC**
Nick Suciu III (*pro hac vice*)
1644 Bracken Rd.
Bloomfield Hills, Michigan 48302
Telephone:  (313) 303-3472
nicksuciu@bmslawyers.com

**SOMMERS SCHWARTZ P.C.**
Jason Thompson (*pro hac vice*)
Rod Johnston (*pro hac vice*)
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone:  (248) 355-0300
jthompson@sommerspc.com
rjohnston@sommerspc.com

**GREG COLEMAN LAW**
Greg Coleman (*pro hac vice*)
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
greg@gregcolemanlaw.com

**JTB LAW GROUP, LLC**
Jason T. Brown (JB6579)
Patrick S. Almonrode (PA0428)
155 2nd Street, Suite 4
Jersey City, New Jersey 07302
Telephone: (877) 561-0000
jtb@jtblawgroup.com
patalmonrode@jtblawgroup.com

*Attorneys for Plaintiffs and putative Class Members*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on January 5, 2018, I submitted the foregoing to the United States District Court for the Southern District of New York via electronic mail and copied all counsel of record in the case.

*/s/ Rachel Soffin*
Rachel Soffin
