UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/15/18

-----------------------------------------------------------X
                                :

BRANDI PRICE, et al.,               :
                                :

                    Plaintiffs,   :          17 Civ. 614 (LGS)
                                :

           -against-         :      OPINION AND ORDER
                                :

L'OREAL USA, INC., et al.,       :
                                :

                    Defendants. :
-----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Plaintiffs Brandi Price and Christine Chadwick (collectively, "Plaintiffs") bring this putative consumer class action against defendants L'Oréal USA, Inc. and Matrix Essentials, LLC (collectively, "Defendants"). Plaintiffs seek to bring fraud and unjust enrichment claims on behalf of a nationwide class; and breach of contract and warranty, and consumer protection claims on behalf of New York and California classes under the laws of those states. Plaintiffs now move for class certification under Federal Rule of Civil Procedure 23(b)(3). For the following reasons, the motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

      In February 2013, Defendants launched a haircare product line called Matrix Biolage Advanced Keratindose Pro-Keratin + Silk. This product line comprises three products: Matrix Biolage Advanced Keratin + Silk Shampoo, Pro-Keratin + Silk Conditioner and Pro-Keratin + Silk Renewal Spray (collectively, the "Products" or "Challenged Products"). The names of the Products (the "Challenged Claims") are featured prominently on the Product labels, and have not changed since the launch of the Products. The only material change to the Products or their packaging since their inception was an alteration of the shape and size of the shampoo and conditioner bottles in late 2014 or early 2015. Plaintiffs are purchasers of the Products who assert

that the Challenged Claims would lead reasonable consumers to believe that they contain keratin, when in fact they do not.

Each Product is typically priced at just over $20. Although Defendants set a wholesale price and a manufacturer's suggested retail price, they have no control over the prices that retailers charge consumers for the Products. Plaintiffs assert that all consumers who purchased the Products paid a price premium due to Defendants' purported misrepresentations on the Product labels.

Defendants deny that the Challenged Claims are misleading and that they had any effect on the pricing of the Products.

Plaintiffs move to certify the following classes[1] under Federal Rule of Civil Procedure 23(b)(3):

> **Nationwide Class:** All persons in the United States and its territories who purchased Matrix Biolage Advanced Keratindose Pro-Keratin + Silk Shampoo, Pro-Keratin + Silk Conditioner, and/or Pro-Keratin + Silk Renewal Spray between January 26, 2013 and the present ("Nationwide Class");
>
> **New York Class:** All persons who reside in the state of New York and purchased Matrix Biolage Advanced Keratindose Pro-Keratin + Silk Shampoo, Pro-Keratin + Silk Conditioner, and/or Pro-Keratin + Silk Renewal Spray between January 26, 2013 and the present ("New York Class"); and
>
> **California Class:** All persons who reside in the state of California and purchased Matrix Biolage Advanced Keratindose Pro-Keratin + Silk Shampoo, Pro-Keratin + Silk Conditioner, and/or Pro-Keratin + Silk Renewal Spray between January 26, 2013 and the present ("California Class").

---

[1] Excluded from the Classes are (a) any person who purchased the Products for resale and not for personal or household use, (b) any person who signed a release of any Defendants in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendants or any entity in which Defendants have a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendants, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) provides that plaintiffs may sue on behalf of a class where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The Second Circuit "has also 'recognized an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *In re Petrobras Secs.*, 862 F.3d 250, 260 (2d Cir. 2017) (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)).

Where, as here, Plaintiff seeks to certify a class under Rule 23(b)(3), Plaintiff also must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Second Circuit gives Rule 23 a "liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997); *accord In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12 Civ. 2548, 2017 WL 1273963, at *5 (S.D.N.Y. Mar. 31, 2017). But "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiff must establish by a preponderance of the evidence that each of Rule 23's requirements is met. *In re Vivendi, S.A. Secs. Litig.*, 838 F.3d 223, 264 (2d Cir. 2016). A certifying court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Shahriar*

*v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (citing *In re IPO Secs. Litig.,* 471 F.3d 24, 41 (2d Cir. 2006)). Although "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (citing *Wal-Mart*, 564 U.S. at 351). Any factual disputes relevant to satisfying each Rule 23 requirement should be resolved, but a court "should not assess any aspect of the merits unrelated to a Rule 23 requirement." *In re IPO Secs. Litig.,* 471 F.3d at 41. A district court may later decertify a previously certified class if it becomes apparent that the requirements of Rule 23 are, in fact, not met. *See* Fed. R. Civ. P. 23(c)(1)(C).

## III. DISCUSSION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d). The motion to certify the Nationwide Class is denied. The motion to certify the New York Class is granted as to the consumer protection and breach of contract claims, and denied as to the breach of warranty, fraud and unjust enrichment claims. The motion to certify the California Class is granted as to the consumer protection and breach of warranty claims, and denied as to the fraud and unjust enrichment claims.

As explained below, the Challenged Claims on the Product labels were uniform. Thus, questions as to their objective materiality to a reasonable consumer are common to all purchasers of the Products. However, questions as to whether consumers actually relied on the Challenged Claims in deciding to purchase the Products can only be answered on an individual basis. Common questions thus predominate over individual questions for claims that do not include actual reliance as an element. Plaintiffs' proposed model for computing class-wide damages, Dr.

4

Dubé's Conjoint Analysis, is reliable and consistent with their price premium theory of damages. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

### a. Rule 23(a) Factors

#### i. Numerosity

Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable." In the Second Circuit, "numerosity is presumed where a putative class has forty or more members." *Shahriar*, 659 F.3d at 252. Defendants do not contest the numerosity requirement. During the class period, millions of units of the Products were sold nationwide to salons for resale to consumers. A substantial portion of those sales came from New York and California.[2] As the numbers in the record establish that each class consists of far more than 40 individuals, the numerosity requirement is met.

#### ii. Commonality

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." "Commonality is satisfied where a single issue of law or fact is common to the class." *In re IndyMac Mortg.-Backed Secs. Litig.,* 286 F.R.D. 226, 233 (S.D.N.Y.2012) (citing *Wal-Mart*, 564 U.S. at 359) ("[E]ven a single common question will do.") (internal quotation marks omitted)). However, class certification requires not only "common questions," but also "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). Plaintiffs must "demonstrate that the class members have suffered the same injury." *Id.* (internal quotation marks omitted).

_____

[2] Defendants' actual sales figures are in the record but are not disclosed here because Defendants consider them to be trade secrets, and they are not material to the Court's consideration of this motion.

As discussed further in the section on predominance, one common question that applies to each class is whether the Challenged Claims are deceptive, unfair, unlawful or misleading to the reasonable consumer. Another common question is whether a reasonable consumer would expect the Products to contain keratin. The commonality requirement is satisfied, and Defendants do not argue otherwise.

### iii.  Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of the class. The requirement is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *accord Balderramo v. Go N.Y. Tours, Inc.*, 15 Civ. 2326, 2017 WL 2819863, at *3 (S.D.N.Y. June 28, 2017). "Instead, Rule 23(a)(3) requires 'only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 406 (S.D.N.Y. 2015) (quoting *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 132 (S.D.N.Y. 2014)).

"Consumers of the same product, exposed to the same marketing and packaging, will have almost entirely the same claims with at most 'minor variations' in the facts surrounding their purchase of the products." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 400 (S.D.N.Y. 2016); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566-67

(S.D.N.Y. 2014) (plaintiff purchasers of mislabeled olive oil products were typical of other potential class members despite any differences relating to their individual purchasing decisions). Because Plaintiffs were exposed to the same marketing and packaging as every other consumer who purchased the Products, Plaintiffs are typical of the classes they seek to represent.

Defendants argue that Plaintiffs do not satisfy the typicality requirement because portions of their deposition testimony suggest that they might not have relied on the Challenged Claims in making their purchasing decisions. This argument is unavailing because, as discussed below in the section on predominance, class certification is granted only as to claims that do not include actual reliance as an element.

### iv. Adequacy

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Shahriar*, 659 F.3d at 253; *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 90 (2d Cir. 2015) (the class representatives interests should not be "antagonistic to the interest of other members of the class"). "Plaintiffs must also have attorneys who are 'qualified, experienced, and generally able to conduct the litigation.'" *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Plaintiffs have shown their commitment to prosecuting this action by reviewing and approving the complaints, responding to written discovery requests, producing documents relating to their claims, and preparing and sitting for depositions. Each Plaintiff also has demonstrated an adequate understanding of the basis of the claims and the roles of a class

representative. Nothing in the record suggests that Plaintiffs' interests are antagonistic to those of absent class members.

Plaintiffs' counsel, Morgan & Morgan; Barbat, Mansour & Suciu PLLC; Greg Coleman Law; Sommers Schwartz P.C.; and JTB Law Group, LLC, collectively are experienced in litigating class actions and other complex cases. The partners at these firms are counsel of record in numerous class actions nationwide. Plaintiffs' counsel have also demonstrated their commitment to prosecute this action vigorously by devoting significant resources to investigating the claims, drafting the initial and amended complaints, opposing Defendants' motion to dismiss, conducting significant discovery, working extensively with a qualified expert, preparing and filing this class certification motion, and engaging in merits discovery. The adequacy requirement is satisfied.

### v. Ascertainability

As for the implied ascertainability requirement, "a class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries." *Petrobras*, 862 F.3d at 257. Satisfying this requirement does not "require[] a showing of administrative feasibility at the class certification stage." *Id.* at 265. The classes are ascertainable because they can be determined with reference to one objective criterion with definite boundaries: whether an individual purchased a Product during the class period.

Defendants argue that the classes are not ascertainable because "there are neither records of who purchased the Products nor other means [apart from self-identification] of ascertaining the class members' identities]." This argument is rejected because it takes issue with "administrative feasibility" as opposed to the presence of "objective criteria" as required by *Petrobras*. *Id.* at 257, 265. If a class could be certified only where the parties had access to definitive records

showing class membership, then consumer class actions against manufacturers would be virtually impossible. "Yet the class action device, at its very core, is designed for cases like this where a large number of consumers have been [harmed] but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit." *Ebin*, 297 F.R.D. at 567. In sum, Plaintiffs have satisfied all four requirements of Rule 23(a) as well as the additional implied requirement of ascertainability.

### b. Rule 23(b)(3) Factors

If Rule 23(a) is satisfied, a class may be certified under Rule 23(b)(3) if the court finds "the questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### i. Predominance

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017) (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)). Plaintiffs need not prove, however, that the legal or factual issues that predominate will be answered in their favor. *Amgen*, 568 U.S. at 468. "Individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)," but it is a factor to "consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues." *Roach*, 778 F.3d at 408–09 (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008)). "[A]t the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its

liability case," and "courts must conduct a rigorous analysis to determine whether that is so." *Comcast*, 569 U.S. at 35. "A model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to [the plaintiff's] theory [of liability]." *Id.*

Plaintiffs assert that liability for their claims can be proven using common evidence because "product specific labeling and packaging claims . . . do not require proof as to individual understanding and can be judged based on the objective standard of proof." *Goldemberg*, 317 F.R.D. at 389. Plaintiffs assert that the claims "all arise from Defendants' uniform course of conduct" because "[t]he Products, which uniformly include and emphasize the Keratindose name on the front and center of every Produce label, do not actually contain keratin." Plaintiffs further argue that damages in the form of a price premium can be measured and assessed at trial.

Defendants disagree, arguing that individual questions as to materiality, reliance and injury will predominate in determining liability, that "differences among the fraud laws of the 50 states preclude certification of a nationwide class," that "Plaintiffs have no valid damages model," and that "an analysis of market prices shows there is no price premium for keratin claims."

Questions as to Defendants' course of conduct, materiality and injury are common questions, but questions as to reliance are individualized. As explained below, class certification is appropriate only as to claims that do not include actual reliance as an element.

### 1. Liability Under Each Claim

#### a. New York GBL § 349

To establish a prima facie case under GBL § 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith,* 230 F.3d

518, 521 (2d Cir. 2000) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (N.Y. 1995)) (applying New York law). Materiality under section 349 is an objective inquiry; a deceptive act is defined as one "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* Section 349 requires neither proof of reliance, *see Koch v. Acker, Merrall & Condit Co.,* 18 N.Y.3d 940, 941 (N.Y. 2012), nor proof of intent to mislead consumers, *see Oswego*, 85 N.Y.2d at 26.

Plaintiffs' New York GBL claim thus depends on generalized evidence. Classwide evidence will be used to establish whether Defendants' labeling was deceptive, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances. The Supreme Court has held that materiality "is a question common to all members of the class" when, as here, the materiality of an alleged misrepresentation is judged according to an objective standard. *See Amgen*, 568 U.S. at 459 ("The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class.").

Likewise, as discussed below, classwide evidence will determine whether plaintiffs were injured. Plaintiffs allege they suffered economic harm when they overpaid for products whose labeling misleadingly suggested the Products contain keratin. *See, e.g., Goldemberg*, 317 F.R.D. at 385 (certifying class action involving labels on certain Aveeno "Active Naturals" products); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409 (finding a common injury was susceptible to classwide proof where class members paid a premium for a product based on the false claim that it could make grass grow 50% thicker); *Ebin*, 297 F.R.D. at 569 (finding a common injury susceptible of classwide proof where plaintiffs received "an inferior product different from that which the consumers purchased"); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 483 (C.D. Cal. 2012) (finding common issues predominate as to injury on plaintiffs' GBL claims because "the

issue of whether plaintiffs and class members would have purchased [the product] had they known" advertising was false "can be established with common proof").

b. **California UCL and FAL**

Claims brought under the UCL and FAL "are governed by the 'reasonable consumer' test." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." *Id.* (internal quotation marks omitted). As discussed above, materiality "is a question common to all members of the class" when, as here, the materiality of an alleged misrepresentation is judged according to an objective standard. *Amgen*, 568 U.S. at 459.

Relief under the UCL and FAL is available without individualized proof of "'reliance and injury,' so long as the named plaintiffs demonstrate injury and causation." *Guido*, 284 F.R.D. at 482 (quoting *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1289 (Ct. App. 2002)). "A presumption, or at least an inference, of reliance arises under the UCL and FAL whenever there is a showing that a misrepresentation was material." *McCrary v. Elations Co., LLC*, No. 13 Civ. 00242, 2014 WL 1779243, at *14 (C.D. Cal. Jan. 13, 2014) (internal quotations omitted); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (A class action plaintiff need not "demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement" of the UCL). The objective test for materiality and thus reliance "renders claims under the UCL [and] FAL . . . ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (internal quotation marks omitted).

### c. **New York Warranty Claims**

Plaintiffs bring claims under New York law for breach of express warranty under the UCC and, in the alternative, common law breach of warranty. "New York breach of express warranty claims require (i) a *material statement* amounting to a warranty; (ii) the buyer's *reliance* on this warranty as a basis for the contract with his immediate seller; (iii) the *breach* of this warranty; and (iv) injury to the buyer *caused* by the breach." *Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013) (emphasis in original) (citing *CBS Inc. v. Ziff–Davis Publ'g Co.*, 75 N.Y.2d 496, 502–504 (N.Y. 1990)). To state a claim for common law breach of warranty, a plaintiff must show that "(1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant." *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (citing *CBS*, 75 N.Y. 2d at 501-06). Thus, New York warranty claims require proof of reliance.

"New York uses a basis of the bargain conception of reliance for express and common law warranty claims." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 410–11. "In contrast to the reliance required to make out a claim for fraud, the general rule is that a buyer may enforce an express warranty even if it had reason to know that the warranted facts were untrue." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007); *see also CBS*, 75 N.Y.2d at 503–04. However, when "a buyer closes on a contract in the full knowledge and acceptance of facts disclosed by the seller which would constitute a breach of warranty under the terms of the contract, the buyer should be foreclosed from later asserting the breach." *Galli v. Metz,* 973 F.2d 145, 151 (2d Cir. 1992).

When, as here, the "basis of the bargain" conception of reliance applies, individual questions predominate because the validity of each buyer's claim would depend on her knowledge of whether or not the Products contain keratin. Class certification is therefore inappropriate for these claims. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 411 (declining to certify a class claiming breach of express warranty and common law warranty under New York law because "each buyer's knowledge of the truth or falsity of [the product's] advertising claims require evaluation"); *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742, 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010) (declining to certify a class as to New York express warranty claim because "reliance on Snapple's 'All-Natural' label cannot be the subject of generalized proof"); *Klein v. Robert's Am. Gourmet Food, Inc.*, 28 A.D.3d 63, 72 (2d Dep't 2006) (reversing lower court's decision that common questions predominated with respect to reliance in a New York express warranty claim).

### d. **New York Breach of Contract Claim**

In the event the statements on the Product labels are deemed not to be a warranty under the New York UCC or common law, Plaintiffs bring a claim for breach of contract under New York Law.[3] In New York, a claim for breach of contract requires proof of: "(1) a valid contract; (2) plaintiff's performance; (3) defendant's failure to perform; and (4) damages resulting from the breach." *Macaluso v. U.S. Life. Ins. Co.,* 2004 WL 1497606, at *3 (S.D.N.Y. July 2, 2004) (citing *Furia v. Furia,* 116 A.D.2d 694, 695 (2d Dep't 1986)).

---

[3] Defendants argue that Plaintiffs cannot succeed on this claim because they lack privity of contract. The argument appears valid as to the merits of this case, but is not relevant for the purposes of this motion.

Defendants' representations to each class member were identical, and the class members all performed by purchasing the Products. Plaintiffs' claims for breach of contract thus depend on whether valid contracts were formed and whether Defendants breached those contracts. These questions predominate over any individual questions, and class certification is therefore appropriate. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 411 (certifying a class of New York breach of contract claimants for allegedly deceptive advertising); *Taylor v. Am. Bankers Ins. Grp., Inc.*, 267 A.D.2d 178, 178 (1st Dep't 1999) (affirming certification of a breach of contract claim when "the predominant focus of this litigation is defendants' general practice of offering, in prominent print, ostensibly easily available credit insurance coverage . . . and then rejecting insurance claims").

e. **California Express Warranty Claim**

To prevail on a breach of express warranty claim under California law, plaintiffs must prove "(1) the seller's statements constitute an affirmation of fact or promise . . .; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614, 626 (Ct. App. 2010) (internal quotation marks omitted). However, plaintiffs "need not establish reliance as an element of [an] express warranty claim, and thus, need not establish reliance on a classwide basis." *Karim v. Hewlett-Packard Co.*, No. 12 Civ. 5240, 2014 WL 555934, at *6 (N.D. Cal. Feb. 10, 2014); *see also Weinstat*, 103 Cal. Rptr. 3d at 626 (holding that "the concept of reliance has been purposefully abandoned" for express warranty claims under the California UCC).

Because reliance is not an element of express warranty claims under California law, common questions predominate and class action treatment is appropriate. *See, e.g.*, *Brown v. Hain Celestial Grp.*, No. 11 Civ.3082, 2014 WL 6483216, at *17-18 (N.D. Cal. Nov. 18, 2014)

15

(certifying class claiming violation of California's express warranty law when products were allegedly falsely labeled organic); *Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) (citing *Vasquez v. Super. Ct.*, 94 Cal. Rptr. 796, 805 (1971)) (holding that a class action is appropriate for California express warranty claims where "material misrepresentations were made to all class members").

### f. **Fraud Claim**

Plaintiffs seek to bring a claim for fraud on behalf of the Nationwide Class as well as their New York and California Classes. Justifiable reliance is an element of fraud under both New York and California law, *see, e.g.*, *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (N.Y. 2011); *Whiteley v. Philip Morris Inc.*, 117 Cal. App. 4th 635, 681 (Ct. App. 2004), *as modified on denial of reh'g* (Apr. 29, 2004), and some form of reliance is required under all states' laws for a fraud claim, *see* Warder Decl. Ex. 6 at 8-10. The viability of each class member's fraud claim turns on whether or not he or she relied on alleged representations that the Products contain keratin. Individual customers' reliance is not subject to general proof in this case. Thus, certification of any class based on a fraud claim is inappropriate. *See, e.g.*, *McLaughlin*, 522 F.3d at 223 (class certification is inappropriate where reliance "cannot be the subject of general proof.").

Plaintiffs argue that the misrepresentations in this case are "so fundamental that it is reasonable to infer . . . that plaintiffs in fact relied on those representations in becoming customers." (quoting *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 139 (S.D.N.Y. 2014)) (alterations and internal quotation marks omitted). *See, e.g.*, *Ebin*, 297 F.R.D. at 564 (certifying a class as to fraud claims based on labeling falsely stating that a product was "100% Pure Olive Oil"). Such an inference is not warranted here. Customers may have had many reasons for

purchasing the Products apart from their purported keratin content. For instance, customers may have been drawn to the Products' smell, color, consistency, the aesthetics of their packaging, or their ability to clean and condition hair.[4]

### 2. **Defendants' Expert Testimony Regarding Materiality**

As discussed, where materiality is determined based on an objective standard, it is subject to classwide proof. *See Amgen*, 568 U.S. at 459. Defendants nonetheless argue that no class should be certified because the Challenged Claims are not material to reasonable consumers. Defendants proffer the expert report of Dr. Eli Seggev, which purports to show through an experimental study that "consumers' purchase interest is unchanged by the presence or absence of the terms 'Keratindose' or 'Pro-Keratin' on the Products' labels." Plaintiffs' expert Dr. Dubé criticizes Dr. Seggev's study for a flawed design that "creates a mechanical bias against a finding of a positive benefit from the Challenged Claims on consumers' purchases," and for misinterpreting his study's failure to find evidence of materiality as affirmative proof of immateriality. The Court need not assess the merits of Dr. Seggev's report because the report does not purport to show that materiality cannot be proven or disproven through common evidence. On the contrary, the study purports to show the opposite -- that common evidence such as an experimental study can shed light on the question of materiality. Defendants' argument against class certification based on Dr. Seggev's finding of no materiality is thus rejected.

---

[4] The complaint also asserts a claim of unjust enrichment on behalf of the Nationwide Class and the New York and California subclasses (Count V). Count V was dismissed to the extent asserted under New York and California law, and the parties do not address this claim in their briefing. Thus, the Court declines to certify any class as to this claim.

3. **Classwide Damages**

To satisfy the predominance requirement, plaintiffs must propose a damages model consistent with their theory of liability. *See Comcast*, 569 U.S. at 33-35. "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of 23(b)(3)." *Id.* at 35. The damages model proffered by Plaintiffs' expert Dr. Dubé meets this requirement by calculating the economic value to consumers of the Challenged Claims.

The Complaint's theory of liability is that the Challenged Products falsely represented that they contained keratin when they did not, and that "Plaintiffs and putative Class Members have been harmed, as they would not have purchased the Products or would have paid less for them had they known the Products did not contain keratin." Plaintiffs must therefore propose a damages model that determines the value attributable to the Challenged Claims.

Plaintiffs assert that damages can be measured classwide, offering the proposed methodology of their damages expert, Dr. Dubé. Dr. Dubé's proposed method, "Conjoint Analysis" is a "well-established damages model." *Briseno v ConAgra Foods, Inc*., 674 Fed App'x 654, 657 (9th Cir. 2017) (summary order). The methodology is intended to determine any price premium charged for the Challenged Products on account of the Challenged Claims, and the incremental consumer willingness to pay for the Challenged Products without the Challenged Claims.[5]

---

[5] Payment of a price premium qualifies as a measure of damages consistent with the theory of liability for each claim certified. Under the New York GBL, "[i]njury is adequately alleged under GBL §§ 349 . . . by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." *Ackerman v. Coca–Cola Co.,* No. 09 Civ. 0395, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010). For breach of contract under New York law, "the measure of

The proposed analysis would determine the value consumers place on individual attributes of a given product by looking at consumers' hypothetical purchasing decisions in a survey involving different combinations of product attributes such as brand, price, and the presence or absence of the Challenged Claims. As explained in Dr. Dubé's report:

> [A choice-based conjoint survey] proceeds by asking the consumers in the survey sample to respond to a sequence of choice tasks. In each task, the consumer is presented with a choice between a finite number of product alternatives. Each alternative is described by a set of features chosen by the analyst, including the price. Typically, a no-purchase alternative is included in the choice set. For each task, the consumers must make a single choice. Across each task, the analyst changes the set of products, the levels of the features and the prices in the choice set. Therefore, it is possible for the analyst to include branded products or products that include or exclude the Challenged Claims, consistent with the allegations in this case. This procedure allows the analyst to observe how the consumer trades-off features and prices. The data consists of the choices and the corresponding features of the product alternatives from each task.

This method is designed to determine not only the price premium, but also the "willingness-to-pay" -- which accounts for the possibility that prices across competitor products could change if products with the Challenged Claims were not offered on the market, or "that Class Members may have paid less for the Challenged Products but-for the Challenged Claims

---

the damage is the amount necessary to put the injured party in exact position as he would have been if the contract had not been breached[,]" *Perma Research & Dev. v. Singer Co.*, 542 F.2d 111, 116 (2d Cir. 1976); *accord* 4B N.Y. Prac., Com. Litig. in New York State Courts § 72:61 (4th ed.), or in this case, the difference between the value of the Products to consumers with and without keratin. Similarly, because the California "UCL and false advertising law are both intended to preserve fair competition and protect consumers from market distortions," harm occurs for the purposes of the California statutes "at the moment of purchase" once a buyer is "forced to pay more than he or she would have" absent the deceptive conduct. *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 893 (Cal. 2011). For breach of express warranty under California law, under California's Uniform Commercial Code, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Cal. Com. Code § 2714.

(the "price premium") but may also have chosen not to purchase the Challenged Products at all without the Challenged Claims." This approach satisfies the requirement of *Comcast* -- that Plaintiffs match their damages model to their liability theory. *See, e.g.*, *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 551 (E.D.N.Y. 2017); *In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919, 1026 (C.D. Cal. 2015) (citing cases where conjoint analysis was used to calculate price premium damages at the class certification stage).

Defendants assert that Dr. Dubé's model fails to satisfy *Comcast* because it does not calculate a price premium. This argument is rejected because the model does calculate a price premium and more to ascertain the economic value to consumers of the Challenged Claims. In other words, the model calculates as damages the difference between what Plaintiffs thought they were getting and what they actually got when they purchased the Challenged Products.

Defendants assert that Dr. Dubé lacks data on the actual prices consumers paid for these products, which may have deviated from the manufacturer's suggested retail prices; and that Dr. Dubé fails to "identify an alternate product on the market that can be used as a yardstick for calculation of the alleged price premium." Both of these arguments are rejected because they misconstrue the data required to conduct the proposed Conjoint Analysis. Conjoint Analysis relies on data produced by surveys with hypothetical product-feature and price variations, conducted specifically for the purposes of evaluating a specific product to tease out the value to consumers of a particular product feature. These surveys have not required extensive data on actual sale prices or competing products in the market to produce valid results. *See, e.g.*, *Guido*, 2014 WL 6603730, at *12 (approving of Conjoint Analysis as a method for computing damages that satisfies *Comcast* where sales data is unavailable); *see also Kurtz*, 321 F.R.D. at 551 ("Properly developed survey evidence is admissible subject to arguments regarding its weight and

probative value.") (quoting *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1245 (E.D.N.Y. 2006)).

Finally, Defendants assert that Dr. Dubé's proposed model "lacks the requisite detail to ensure its reliability." Defendants claim that Dr. Dubé "has not yet identified all the features he might test, has not decided *how* he will go about determining that set of features, and has not identified how he will present any such features to consumers in his survey." This argument fails because, at this stage, "the Court need only decide if the proposal is capable of matching the liability case to the damages case . . . ." *Goldemberg*, 317 F.R.D. at 394. "[N]othing in *Comcast* requires an expert to *perform* his analyses at the class certification stage." *In re Scotts*, 304 F.R.D. at 414. Plaintiffs have satisfied their burden of showing that an appropriately designed Conjoint Analysis can reliably estimate the economic value to consumers of the Challenged Claims.

Plaintiffs' proposed damages model satisfies the predominance requirement.[6]

### ii.  Superiority

To proceed under Rule 23(b)(3), common questions must not only predominate, but a class action must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The factors to be considered during this

_____

[6] Although New York GBL § 349(h) provides for statutory damages of $50 per violation, the statute also requires "actual, although not necessarily pecuniary harm." *Oswego*, 85 N.Y. 2d at 26. Plaintiffs' damages model provides common proof of actual injury, which "is bound up in proof of damages, or by how much plaintiffs have been harmed." *McLaughlin*, 522 F.3d at 227. "Only by showing that plaintiffs in fact paid more for [the product] *as a result* of [the Challenged Claims] can plaintiffs establish [through class-wide evidence] the requisite element[] of . . . actual injury under § 349." *Weiner*, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010) (emphasis in original).

analysis that "implicate the superiority inquiry" include: the class members' interests in joint rather than individual actions, the extent of litigation concerning the controversy already begun by class members, the desirability of the class forum, and any difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3)(A-D); *Sykes*, 780 F.3d at 82. Defendants do not raise any arguments regarding superiority.

Consumer class actions of this variety, designed to recover relatively small price premiums in comparison to the expense and burden of litigation, are clearly superior to the alternative of forcing consumers to litigate on principle. *See Amgen*, 568 U.S. at 478 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

These considerations weigh in favor of finding that class members' interests would best be served by a joint action. Now that the action does not involve the Nationwide Class, judicial oversight of the class would be manageable. The Court is not aware of any other litigation concerning this particular controversy, and can find no reason why this forum is less desirable than any alternative. A class action is the superior method of resolving this case.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3) and appointment of class counsel is GRANTED in part and DENIED in part. It is hereby ORDERED that:

1. The motion to certify the Nationwide Class is DENIED.

2. The motion to certify the New York Class is GRANTED in part and DENIED in part as follows:

    a. The New York Class is defined as

      All persons who reside in the state of New York and purchased Matrix Biolage Advanced Keratindose Pro-Keratin + Silk Shampoo, Pro-Keratin + Silk Conditioner, and/or Pro-Keratin + Silk Renewal Spray between January 26, 2013 and the present.

    b. The New York Class is certified only as to Count IX (New York GBL § 349) and the Breach of Contract claim under Count II (not the alternative claim for Breach of Common Law Warranty).

    c. Plaintiff Price is appointed as class representative for the New York Class.

3. The motion to certify the California Class is GRANTED in part and DENIED in part as follows:

    a. The California Class is defined as

      All persons who reside in the state of California and purchased Matrix Biolage Advanced Keratindose Pro-Keratin + Silk Shampoo, Pro-Keratin + Silk Conditioner, and/or Pro-Keratin + Silk Renewal Spray between January 26, 2013 and the present.

    b. The California Class is certified only as to Counts III (Express Warranty), VI (California UCL, Unfair Business Acts and Practices Prong), VII (California UCL Fraudulent Business Acts and Practices Prong), VIII (California UCL, Unlawful Prong), and X (California FAL).

    c. Plaintiff Chadwick is appointed as class representative for the California Class.

4. Morgan & Morgan; Barbat, Mansour & Suciu PLLC; Greg Coleman Law; Sommers Schwartz P.C.; and JTB Law Group, LLC are appointed as co-class counsel.

5. By September 5, 2018, Plaintiffs shall, after conferring with Defendants, provide the Court with a joint proposed notice as required by Federal Rule of Civil Procedure 23(c)(2), and explain how they propose that notice will be made.

The Clerk of Court is respectfully directed to close the motion and Docket No. 146.

Dated: August 15, 2018
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE