UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                              :

BRANDI PRICE AND CHRISTINE        :
CHADWICK, individually and on behalf of all  :
others similarly situated,                :         17 Civ. 614 (LGS)
                          Plaintiffs,  :

            -against-              :        **OPINION AND ORDER**
                              :

L'ORÉAL USA, INC. AND MATRIX      :
ESSENTIALS LLC,                  :
                     Defendants  :
-----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Plaintiffs Brandi Price and Christine Chadwick bring consumer class action claims

against Defendants L'Oréal USA, Inc. and Matrix Essentials, LLC on behalf of two previously

certified classes, a California class and a New York class, alleging misleading and fraudulent

labeling of haircare products under the two states' respective laws.  Defendants move to

decertify the classes and exclude the expert testimony of Dr. Jean-Pierre Dubé, whom Plaintiffs

engaged to measure the economic damages on a class-wide basis.  Plaintiffs move to exclude the

expert testimony of Ms. Nikola Cline and Dr. Carol Scott, whom Defendants engaged to rebut

the testimony of Dr. Dubé.  For the following reasons, Defendants' motion to decertify the

classes is granted and the parties' motions to exclude expert testimony related to class-wide

damages are denied as moot.

## I.    BACKGROUND

### A.    Relevant Facts

      Familiarity with the underlying facts is assumed.  *See Price v. L'Oréal USA, Inc.*, No. 17

Civ. 614, 2017 WL 4480887, at *1 (S.D.N.Y. Oct. 5, 2017) (Defendants' partial motion to

dismiss) ("*Price I*"); *Price v. L'Oreal USA Inc.*, No. 17 Civ. 614, 2018 WL 3869896, at *1

(S.D.N.Y. Aug. 15, 2018) (Plaintiffs' motion for class certification) ("*Price II*"); *Price v. L'Oréal USA, Inc.*, No. 17 Civ. 614, 2020 WL 4937464, at *1 (S.D.N.Y. Aug. 24, 2020) (Defendants' motion for summary judgment) ("*Price III*").

In 2013, Defendants launched a haircare product line called Matrix Biolage Advanced that included a Keratindose system of three products: the Pro-Keratin + Silk Shampoo, the Pro-Keratin + Silk Conditioner and the Pro-Keratin + Silk Renewal Spray (collectively, the "Challenged Products"). The words "Pro-Keratin + Silk" appear on the front of the bottles. The word "Keratindose" appears on the front of the Challenged Products' labels and the first seven letters of the word appear in bold font as follows: **Keratin**dose.

Keratin is a protein that is found in human hair and is also a treatment that customers administer to their hair. The Challenged Products do not and have never contained keratin as an ingredient, and the ingredients lists on the back labels of the Challenged Products do not include keratin. Plaintiffs are purchasers of the Challenged Products and assert that the terms "Keratindose" and "Pro-Keratin" (collectively, the "Challenged Claims") would lead reasonable consumers to believe that the Challenged Products contain keratin, and that they would not have purchased the Challenged Products, or would not have paid as much for the Challenged Products, had they known the Challenged Products did not contain keratin.

Plaintiffs engaged Dr. Dubé to measure economic damages on a class-wide basis. He conducted a choice-based conjoint survey of 1,035 respondents to determine survey respondents' preferences for shampoo product features, including the Challenged Claims, and to determine whether the Challenged Claims had a statistically significant impact on survey respondents' preferences and demand for the Challenged Products (the "Conjoint Survey Analysis"). The respondent population consisted of women "who have gone to a salon and had extensive

2

chemical treatments and therefore have overprocessed hair."  Of the 1,035 respondents, 105 had previously purchased one of the Challenged Products within the last four years, and of those purchasers, eight were from New York and ten were from California.  Each respondent completed twelve choice tasks in which he or she was asked to choose one of three hypothetical shampoo products.  The choice tasks presented each hypothetical product as a combination of features from four categories of product attributes:  "Brand," "Packaging Claims," "Package Size," and "Purchase Price."  The "Packaging Claims" field presented none, one or several of the following options: "Keratindose Pro-Keratin + Silk," "With Asta-Repair" and "RCT Protein Complex."

Dr. Dubé then applied the results of his survey to an economic damages model to calculate economic damages per product purchase.  Based on this analysis Dr. Dubé concluded that the total economic damage to class members is $4.18 per product purchase, which is twenty-one percent of the current price actually charged for the Pro-Keratin + Silk Shampoo.  The $4.18 includes both a price premium of $1.51 (seven percent of the current price actually charged for the Pro-Keratin + Silk Shampoo) and the "expected, incremental benefits to class members in dollars associated with [the] Challenged Claims," or the "willingness-to-pay."  Although Dr. Dubé originally proposed conducting a separate conjoint analysis for each of the three Challenged Products, his ultimate analysis focuses only on the Pro-Keratin + Silk Shampoo.  Dr. Dubé proposes calculating aggregate class-wide economic damages with the following equation:

Aggregate Economic Damages = (# bottles) x ($ price) x (% damages).

## B.    Procedural History

Plaintiffs commenced this action in January 2017.  On October 5, 2017, Defendants' motion to dismiss was denied, except that Count V for unjust enrichment under New York or

California Law was dismissed.  *See Price I*, 2017 WL 4480887, at *7.

On August 15, 2018, Plaintiffs' motion for class certification was granted in part.  *See Price II*, 2018 WL 3869896, at *1, 11-12.  Two classes were certified:  (1) a California Class, bringing claims of breach of express warranty (Count III); violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq., Unfair Business Acts and Practices Prong (Count VI), Fraudulent Business Acts and Practices Prong (Count VII) and Unlawful Prong (Count VIII); and violation of the California False Advertising Law, Cal. Civ. Code §§ 17500, et seq., (Count X); and (2) a New York Class, bringing claims of violation of the Unfair and Deceptive Trade Practices Act, New York GBL §§ 349, et seq. (Count IX); and breach of contract (Count II).  *Price II*, 2018 WL 3869896, at *1, 11-12.  Classes were not certified to assert Plaintiffs' New York breach of express warranty and California and New York fraud claims because individualized questions regarding reliance predominated.  *Id.* at *7-8.

Class certification was granted pursuant to Federal Rule of Civil Procedure 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  *Id.* at *2 (citing Fed. R. Civ. P. 23(b)(3)). Predominance was found in part because Plaintiffs' expert Dr. Dubé's proposed Conjoint Survey Analysis allowed for the calculation of class-wide damages consistent with Plaintiffs' theory of liability -- "that the Challenged Products falsely represented that they contained keratin when they did not, and that Plaintiffs and putative [c]lass [m]embers have been harmed, as they would not have purchased the Products or would have paid less for them had they known the Products did not contain keratin."  *Id.* at *9 (internal quotation marks omitted).   Specifically, the Conjoint Survey Analysis was designed to determine,

> not only the price premium, but also the "[incremental consumer] willingness-to-pay" -- which accounts for the possibility that prices across competitor products

> could change if products with the Challenged Claims were not offered on the market, or "that Class Members may have paid less for the Challenged Products but-for the Challenged Claims (the 'price premium') but may also have chosen not to purchase the Challenged Products at all without the Challenged Claims."

*Id.* at *10.

In opposing class certification, Defendants argued that the Conjoint Survey Analysis was unreliable because Dr. Dubé lacked data on the actual prices that consumers paid for the Challenged Products.  This argument was rejected because it misconstrued the data required to conduct a conjoint analysis.

> Conjoint Analysis relies on data produced by surveys with hypothetical product-feature and price variations, conducted specifically for the purposes of evaluating a specific product to tease out the value to consumers of a particular product feature.  These surveys have not required extensive data on actual sale prices or competing products in the market to product valid results.

*Id.* at *10 (collecting cases in support of this proposition).

In March 2020, Defendants filed a motion for summary judgment on all of Plaintiffs' remaining claims.  Defendants also filed motions to exclude portions of Plaintiffs' expert testimony relating to the motion for summary judgment, including certain testimony of Dr. Dubé. On August 24, 2020, Defendants' motion for summary judgment was granted on the New York breach of contract claim but otherwise denied.  *Price III*, 2020 WL 4937464, at *13.  Although Dr. Dubé's equation for calculating aggregate class-wide damages was not rejected, several of his assumptions regarding the inputs for the equation (*i.e.*, "$ price" of the Challenged Products and "# bottles" sold) were rejected as unreliable.  *Id.* at *11. Specifically, Dr. Dubé's proposal that manufacturer suggested retail prices should serve as a proxy for the price of the Challenged Products was rejected as unreliable.  *Id.* at *6.  In addition, Dr. Dubé's proposals that nationwide retail sales could be calculated by adjusting nationwide wholesale sales data to account for a 5% shrinkage rate or, alternatively, removing all wholesale orders that do not have corresponding re-

order at a later date, were rejected as unreliable.  *Id*. at *7.

Defendants now move to decertify the classes.  The parties also move to exclude certain related expert testimony; Defendants move to exclude the testimony of Dr. Dubé, and Plaintiffs move to exclude the testimony of Ms. Cline and Dr. Scott.  For the reasons below, Defendants' motion to decertify the classes is granted, and the parties' motions to exclude expert testimony are denied as moot.

## II.   MOTION TO DECERTIFY THE CLASSES

### A.   Standard

A district court's "order denying or granting class status is inherently tentative" and is "subject to revision."  *Coopers v. Lybrand & Livesay*, 437 U.S. 463, 469 n.11 (1978); *accord Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016).  Pursuant to Rule 23(a), plaintiffs may sue as a class only if:

> (1) [t]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition, the class must be ascertainable, meaning it is capable of definition "by objective criteria."  *In re Petrobras Sec. Litig.*, 862 F.3d 250, 264 (2d Cir. 2017); *de Lacour v. Colgate-Palmolive Co.*, No. 16 Civ. 8364, 2021 WL 1590208, at *4 (S.D.N.Y. Apr. 23, 2021).  A class must also satisfy at least one of the provisions of Rule 23(b).  Rule 23(b)(3) permits class certification if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Even at decertification, the plaintiff bears the burden of proof, *Money Store*, 829 F.3d at 270, and must

establish by a preponderance of the evidence that the requirements of Rule 23 are met, *In re Petrobras Sec. Litig.*, 862 F.3d at 260.

### B.     DISCUSSION

Defendants' motion to decertify the classes is granted because Plaintiffs have not provided a means of calculating class-wide damages consistent with Plaintiffs' alleged injury -- that they paid a price premium because of the Challenged Claims.  Defendants do not challenge whether Plaintiffs have satisfied the Rule 23(a) requirements and instead focus on whether Plaintiffs have satisfied the predominance requirement of Rule 23(b)(3).  To satisfy the predominance requirement of Rule 23(b)(3), "plaintiffs must propose a damages model consistent with their theory of liability."  *Price II*, 2018 WL 3869896, at *9 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-35 (2013)).

In *Comcast Corp. v. Behrend*, the district court accepted one of four theories of injury related to a Sherman Act claim, but the plaintiffs offered a class-wide model for calculating damages that related to all four theories of injury.  *Comcast*, 569 U.S. at 35.  The Supreme Court rejected this approach, explaining that "a model purporting to serve as evidence of damages . . . must measure only those damages attributable to [the accepted theory of injury]."  *Id.*  "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Id.*  "The problem in *Comcast*, then, was that the model of *damages* did not connect to the theory of *injury*."  *Sharpe v. A&W Concentrate Co.*, No. 19 Civ. 768, 2021 WL 3721392, at *6 (E.D.N.Y. July 23, 2021) (emphasis in original) (explaining that "[i]f th[e proposed] conjoint analysis shows a price premium, it will satisfy the main concern in *Comcast* -- that 'any model supporting a plaintiff's damages case must be consistent with its liability case'" (quoting *Comcast*, 569 U.S. at 35));

*accord Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015) ("All that is required at class certification is that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." (internal quotation marks omitted)).

### i. Conjoint Survey Use of "Pro-Keratin + Silk"

Defendants object to Dr. Dubé's Conjoint Survey Analysis on the ground that it tested the term "Keratindose Pro-Keratin + Silk" rather than "Keratindose" and "Pro-Keratin" separate from the term "+ Silk", and that as a result, there is no way to isolate the impact of the term "Keratindose" and "Pro-Keratin" from the impact of the term "+ Silk." "[A] model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to [the plaintiff's] theory." *Comcast*, 569 U.S. at 35. "Courts routinely reject price premium methodologies under *Comcast* when the proposed methodologies do not attempt to isolate the premium due only to the allegedly misleading marketing statement." *Famular v. Whirlpool Corp.*, No. 16 Civ. 944, 2019 WL 1254882, at *11 (S.D.N.Y. Mar. 19, 2019) (collecting cases from the United States District Court for the Northern District of California in support of the proposition that the premium due to the allegedly misleading statements must be isolated); *see also Rodriguez v. It's Just Lunch Int'l*, No. 7 Civ. 9227, 2018 WL 3733944, at *5 (S.D.N.Y. Aug. 6, 2018); 2 McLaughlin on Class Actions, § 5:23 (17th ed. 2020). This is because "consumers may pay a higher price for a product for many reasons that have nothing to do with specific advertising claims." *Famular*, 2019 WL 1254882, at *11. For example, in *McMorrow v. Mondelez Int'l, Inc.*, the court declined to certify a class action where the plaintiffs' claim of liability was that the disputed products' labels were misleading due to the amount of added sugar and use of the word "nutritious," but the plaintiffs' expert conducted a conjoint survey testing the

claims "Nutritious Sustained Energy," "Nutritious Steady Energy All Morning," and "4 Hours of Nutritious Steady Energy."  No. 17 Civ. 2327, 2020 WL 1157191, at *8-9 (S.D. Cal. Mar. 9, 2020).  The court found that the proposed survey did "not tell the [c]ourt whether the respondents would pay a price premium because the product is advertised as being 'nutritious,' or because it is advertised a[s] providing 'steady energy,' or a combination of the two," and as a result, plaintiffs' "theory of liability [was] not consistent with their damages model as required by *Comcast*."  *Id*. at *9.

Here, Dr. Dubé's Conjoint Survey Analysis does not seek to isolate the alleged damages stemming from Defendants' alleged misrepresentations -- that the Challenged Claims "Keratindose" and "Pro-Keratin" lead consumers to believe the Challenged Products contain keratin.  Because the survey combines "Keratindose" and "Pro-Keratin" with "+ Silk," the analysis does not tell the Court whether the survey respondents would pay a price premium because the product is advertised as containing keratin, because it is advertised as containing silk or a combination of the two.  As a result, Dr. Dubé's Conjoint Survey Analysis and methodology for calculating class-wide damages is not consistent with Plaintiffs' theory of injury as required under *Comcast*.  *See Comcast*, 569 U.S. at 35; *see also McMorrow*, 2020 WL 1157191, at *9.  This conclusion is reinforced by Dr. Dubé's deposition testimony that he "was not asked to isolate the effect of 'Silk'" and "would not be able to . . . isolate the effect of 'Silk' separately from the [other] terms – [including] the dominant term KeratinDose."

Plaintiffs contend that (1) Defendants' own experts Dr. Itamar Simonson and Dr. Eli Seggev found that the term "+ Silk" had no impact on consumer preferences and that (2) Defendants' corporate representative testified during her 30(b)(6) deposition that the packaging claim "Pro-Keratin + Silk" is "an ingredient call-out specifically for Keratindose."

First, Drs. Simonson and Seggev did not conclude that "+ Silk" has no value to consumers and, instead, used this term as a control because Plaintiffs did not challenge the accuracy of "+ Silk." Second, it is of no import whether Defendants' corporate representative testified that "Pro-Keratin + Silk" is a call-out for Keratindose.  Plaintiffs have not provided any evidence that consumers interpret the combined term in this manner,[1] and Plaintiffs' theory of injury is that the terms "Pro-Keratin" and "Keratindose" are misleading and lead consumers to believe the Challenged Products contain the ingredient keratin when they do not.  The damages model must align with this theory of injury to satisfy the requirements of *Comcast*.  *See Comcast*, 569 U.S. at 35.

In addition, Plaintiffs argue that Defendants have acknowledged that the challenged terms in this litigation are "Keratindose" and "Pro-Keratin + Silk," the words that appear on the bottle, rather than simply, "Keratindose" and "Pro-Keratin."  However, Plaintiffs acknowledge that the term "+ Silk" is not false or misleading and Plaintiffs' theory of injury is that the Challenged Claims would lead reasonable consumers to believe that the Challenged Products contain keratin. Accordingly, Plaintiffs' damages model must show class-wide damages due to the Challenged Claims.  *Id.*  In the context of the Conjoint Survey Analysis, inclusion of the full phrase "Pro-Keratin + Silk," without any counterbalancing options to determine the impact of "+ Silk" on purchasing decisions, prevents reliable determination of the impact of the Challenged Claims. *See McMorrow*, 2020 WL 1157191, at *8-9 (rejecting a conjoint survey analysis that did not isolate the impact of misleading claim that the product was "nutritious" and proposing that market conditions could be simulated by including an option with the full phrase on the bottle along with an additional option designed to tease out the impact of the misleading term).

---

[1] Defendants have pointed to evidence that other representatives have testified that the term "+ Silk" is its own ingredient claim, separate from "Pro-Keratin."

Plaintiffs also contend that this argument is untimely and that Defendants should have raised it at the class certification stage.  However, this contention is unpersuasive as Dr. Dubé's pre-certification report did not clearly indicate that he intended to test the term "Keratindose Pro-Keratin + Silk," rather than "Pro-Keratin" and "Keratindose" on their own.  *See Money Store*, 829 F.3d at 266 (decertification may be appropriate "in light of the evidentiary development of the case") (citation omitted); *Bruton v. Gerber Prods. Co.*, No. 12 Civ. 2412, 2018 WL 1009257, at *9 (N.D. Cal. Feb. 13, 2018) (referring to the analysis of a case in which "the [c]ourt decertified the classes because the actual damages model [the plaintiffs' expert] implemented instead of the proposed Regression Model failed to satisfy Rule 23(b)(3)'s predominance requirement").

In addition, Plaintiffs argue that this particular challenge should go toward the weight and not the admissibility of the Conjoint Survey Analysis.  However, such an argument misses a critical point -- even if Dr. Dubé's testimony and Conjoint Survey Analysis are admissible, Plaintiffs must provide a means of calculating class-wide damages consistent with their theory of injury.  *See Comcast*, 569 U.S. at 35.  Here, Plaintiffs' theory is that consumers paid a price premium because of the Challenged Claims.  Because the impact of "Pro-Keratin" cannot be isolated from the impact of "+ Silk," Plaintiffs have not provided a means of calculating the price premium consumers paid because of the Challenged Claims and therefore, have not satisfied the requirements of *Comcast*.

### ii.   Absence of Evidence on Quantity and Average Price of New York and California Retail Sales

Defendants also argue that although Dr. Dubé has provided a formula for calculating class-wide damages, there is no reliable data to input and as a result, Plaintiffs have failed to satisfy the requirements of *Comcast*.  Specifically, Defendants contend that there is no data in the

record as to New York or California retail sales during the class period nor the retail price of the bottles sold.  This is an additional ground for decertification because, without sufficient evidence to apply to Dr. Dubé's formula for aggregate class-wide damages, Plaintiffs have not produced a reliable method for measuring class-wide damages.  *See In re Amla Litig.*, 328 F.R.D. 127, 136 (S.D.N.Y. 2018) (acknowledging the reliability of plaintiffs' proposal that class-wide damages could be calculated by "multiplying the number of New York purchases of the product by $50," but explaining that plaintiffs would fail to satisfy their burden without evidence of total retail purchases in New York).  This issue is distinct from the argument Plaintiffs made in their motion for class certification; here, the concern is the ultimate figures that are applied to Dr. Dubé's formula for aggregate economic damages, not the figures used in the initial Conjoint Survey Analysis.

Class certification was originally appropriate because Dr. Dubé's proposed methodology appeared to be capable of measuring class-wide damages.  *See Price III*, 2020 WL 4937464, at *11 (explaining that "the record contains evidence of damages in the form of a price premium and a percentage of the price actually charged, based on Dr. Dubé's opinion, and statutory damages are available under the GBL."); *see also In re Kind LLC*, 337 F.R.D. 581, 606 (S.D.N.Y. 2021) ("The question for class certification is whether Plaintiffs have proposed a damages model consistent with their theory (or theories) of liability."); *Pearlstein v. Blackberry Ltd.*, No. 13 Civ. 7060, 2021 WL 253453, at *23 (S.D.N.Y. Jan. 26, 2021) ("Because Plaintiffs have provided a class-wide model for calculating damages arising from its theory of liability, they have met their burden under *Comcast*.").  However, now -- after discovery -- Plaintiffs have not provided the necessary evidence for Dr. Dubé's formula to suffice, and Plaintiffs' proposal that each class member can use Dr. Dubé's formula to prove his or her own damages is not

enough to satisfy their burden of proving class-wide damages.

Because Defendants' motion to decertify the classes is granted, Defendants' remaining arguments in support of decertification are not addressed, and the parties' motions to exclude expert testimony related to class-wide damages are denied as moot.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion to decertify the classes is GRANTED. The parties' motions to exclude are DENIED as moot.

The Clerk of Court is respectfully directed to close the motions at Docket Nos. 297 and 302.

Dated: September 29, 2021
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE